## Hager *v.* Reilly, Appellant.

*Contracts—Master and servant—Payment in profits—Construction.*

Where defendant, a contractor, engaged plaintiff, a carpenter, to give his entire time in connection with defendant's business, for a period of one year, with a proviso that the contract should be renewed from year to year until either party should give the other a specified notice, plaintiff to receive a definite sum as wages and in addition ten per cent. of the net profits, to be ascertained on or about the 31st day of December of each year, no uncompleted building, however, to be considered in any way whatever in the ascertainment of profits for the year until the contract for the same should be fully completed and ended, the contract is a severable one and the profits are to be ascertained in each year separately. There being nothing in the contract indicating that plaintiff was to share losses, but on the contrary there being an express provision that the contract was not to be construed as entitling him to any interest in the business, he is not responsible for losses, and in determining plaintiff's compensation the losses in one year cannot be deducted in ascertaining the percentage of profits due plaintiff for the business of the following year. In making the calculation of net profits, the buildings completed in fact are to be included, although by agreement between the owner and the contractor, the payment therefor may be postponed. Where, at the termination of the contract, certain structures were uncompleted, plaintiff's compensation should be measured and determined as of the 31st of December preceding, apportioning the time required for the completion of the work and allowing plaintiff such proportion as would be due him for the time of his employment thereon.

Argued April 22, 1913. Appeal, No. 105, Oct. T., 1912, by defendant, from decree of C. P. Allegheny Co.,

March T., 1906, No. 627, on bill in equity in case of Howard Hager v. Thomas Reilly. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an accounting. Before F. C. McGirr, referee.

The opinion of the Supreme Court states the case.

The referee found that plaintiff was entitled to $5,045.72.

Exceptions to the report of the referee were dismissed and the report was confirmed and judgment entered for the plaintiff in the sum found by the referee. Defendant appealed.

*Errors assigned* were in dismissing exceptions to the report of the referee and entering judgment for the plaintiff.

*Joseph Stadtfeld,* with him *Michael J. Ryan* and *William B. Rodgers,* for appellant.

*H. LaBarre Jayne,* with him *Charles D. Gillespie,* for appellee.

OPINION BY MR. JUSTICE STEWART, May 28, 1913:

The controversy here arises out of a contract of employment. The plaintiff in the bill, a carpenter, engaged to give to the defendant, whose business was that of contractor and builder, his entire services in connection with the defendant's business operations for the term of one year from 1st January, 1902. The material parts of the contract with respect to the questions involved, are as follows:

"It is hereby further agreed......that the said party of the first part (the defendant) shall pay to the said party of the second part (the plaintiff) the sum of $40 per week from March 1, 1902, as wages, and in addition

thereto, as wages, shall pay to the said party of the second part ten per cent. of the net profits realized during the term of the employment, on all building contracts that may be entered into by the said party of the first part from the first day of January, 1902, including therein the contract upon a certain church building known as the Third Presbyterian Church of Pittsburgh, Pa., entered into prior to that date, but now being completed by the said party of the first part; it being distinctly understood between the parties hereto that the payment of the foregoing ten per cent. of profits by (to) the said party of the second part is to be as wages, in addition to the above-mentioned sum of $40 per week, and is in no way or in any manner or form whatsoever to be construed as entitling the said party of the second part to any interest in the said business or profits thereof, and the said ten per cent. is to be ten per cent. of the net profits after charging against his building contracts the costs and expenses that the said party of the first part incurs in the expense of carrying on his said business."

By the clause next following it was provided that at the pleasure of the party of the first part the employment might continue for another year, and so on from year to year until either party should give to the other, three months' notice prior to the 31st of December of the current year of his intention then to terminate it. It is there further provided that the ten per cent. of the net profits is to be calculated and ascertained on or about the 31st day of December, no uncompleted building, however, to be considered in any way whatever in the ascertainment of profits for the year until the contract for the same shall have been fully completed and ended.

The plaintiff's employment by the defendant continued from 1st January, 1902, until 31st December, 1905, when it terminated. The bill was filed for an account of the profits made during the entire period of

such employment. The answer denied that any profit was made on contracts completed during said period, and further that there was nothing due plaintiff on account, inasmuch as the receipts on contracts completed during said period were less than the expenses of the business. A decree for an account followed and the matter was committed to a referee. The referee finds that no profits were realized during the year 1902, and that the expenses of that year amounted to $5,446.68; that in 1903 there was a loss of $6,445.12; that in 1904 there were net profits of $22,744.15, and that for 1905 the net profits were $122,740.38. After deducting the cash payments made to the plaintiff during the entire term of his employment he awarded him the sum of $5,045.72. The report of the referee was confirmed by the court and final decree was entered in accordance with the finding. In reaching his result the referee treated the contract as severable in years, calculated the net result of each year's business separately, including therein all contracts completed within the year whether they showed profit or loss. The effect was to give to the plaintiff his ten per cent. on the profits earned during the years 1904 and 1905 unaffected by the losses sustained in the two preceding years. It is the contention of the appellant that the contract is entire in its character, covering the whole period of employment, and that the percentage on profits due the plaintiff is to be based on the net results of the entire period; in other words, that the losses of 1902 and 1903 are to be deducted from the profits of the succeeding years and the percentage to be based on the balance. We find nothing in the contract to support this view. The term of employment, as fixed in the contract, was for the one year of 1902; it was left optional with the defendant whether he would continue the employment of plaintiff thereafter, but in case he did so elect, the employment was to be by the year on the same terms. Had the employment terminated with the year 1902, the contract provided

the method of measuring plaintiff's compensation complete in itself, and, with like facility and certainty the same method was to be pursued in ascertaining the compensation for any succeeding year's employment. The year 1902 was a fixed and definite term to which both contracting parties were alike bound; whether the employment should continue beyond that term was uncertain and no fixed limit was set in years beyond which the employment could not extend under this particular contract. The contract provided for but one definite term, to wit: the year 1902, and as to such term the contract was entire. So, too, with respect to each succeeding year over which the employment extended; each was distinct and complete in itself, unrelated so far as the contract provided, with the years that preceded or followed. This must have been the mind of the parties, for the compensation was fixed and determined by the contract when it could not have been known whether the employment was to embrace anything more than the year 1902. To hold otherwise, that the contract was entire, covering the whole period of plaintiff's continuous employment, would lead to the certain result that there could be no demand for the compensation in profits until final discontinuance of the employment no matter how long postponed, whether for four years or forty. And yet this is what the defendant contends for. We cannot accept this as a reasonable construction of the contract, and we find nothing in the contract supporting it.

Another contention is that, conceding the contract to be severable in years, the defendant under its terms was not chargeable with profits in any year except such as were actually received by him during the year, notwithstanding the work had been physically completed within the year; that all profits were to be reckoned as of the year when payment was made for the completed structures. Among the contracts were those of St. James' Memorial Church and Sacred Heart Convent

completed in 1904, but not paid for in full until 1905. The referee included the profits on these in his reckoning for the year 1904. The contention of appellant is that they should have been reckoned in with the business of the year 1905 in computing the profits of the latter year. By this method of estimation the profits for the year 1904, which the referee finds to have been $22,724.15, are reduced to $7,463.27, and by carrying the difference over to the year 1905 and excluding from the reckoning of that year all profits on work not completed within the year, the estimate of the referee is reduced from $138,021.36 to $129,944.58. The materiality of this will be apparent when we come to consider appellant's contention as to contracts uncompleted December 31, 1905. The referee finds a sufficient answer to appellant's claim in the particular mentioned in the following provision of the contract:

"The said ten per cent. of the net profits is to be calculated or ascertained on or about the 31st day of December but it is distinctly understood between the parties that no uncompleted building contract is to be considered in any way whatever in ascertainment of the profits for the year until said running contract is fully completed and ended."

It is too plain for argument that what is here meant by "uncompleted building contract" is uncompleted structure, the subject of the building contract. When such structure was completed and accepted the contract of the builder was fully performed and his obligations thereunder had ceased. As to him it was no longer an uncompleted building contract, and the defendant stood in contract relation with him only. The difference between the cost to the defendant and the contract price was then determined. By whatever sum the cost to the builder was exceeded by the contract price, so much was profit, and the plaintiff's percentage as wages was then due. Seeing that the contract expressly excluded the plaintiff from any participation in the manage-

ment of the business and denied him voice in the making of any building contract, any different construction of the contract between him and the defendant would put it in the power of the latter by agreeing to accept, instead of cash payment for the year, property of speculative value, to not only postpone the payment of the plaintiff's earnings indefinitely, but subject them to risks not incidental to his employment and wholly outside of the contract. It would require an express and unmistakable provision in the contract to this effect to lead us to suppose that such possible result was in contemplation of the parties; and yet if the construction contended for by the appellant be correct there is nothing in the contract that would protect against it. We have stated no extreme or improbable case, but one which if appellant's construction was to prevail might readily occur, in entire honesty and good faith on the part of the builder. The unreasonableness of such construction would be sufficient to condemn it even though the contract were ambiguous; but it is not, and reading it as it is written it admits of no other interpretation than given it by the referee.

At the close of the year 1905 there were certain outstanding uncompleted building contracts, some seven or more. None of these, when completed, showed profits. The aggregate loss, according to the referee's findings was $33,949.78. Appellant, carrying over to the year 1906 unpaid profits earned in 1905 would deduct from this sum the losses suffered in 1905 and allow the plaintiff his percentage based on the difference. This method involves two errors. The first is that we have just referred to. The profits earned in 1905, whether actually paid to the plaintiff or not, were properly included in the reckoning of that year; the second is in making plaintiff's compensation depend on the net results of the business operations for 1906. The plaintiff's reply to this is that he entered into no such contract. The contract expressly negatives any part-

nership relation between the parties. It provides that it is not in any way or manner to be construed as entitling the party of the second part to any interest in the said business or the profits thereof, and that said ten per cent. is to be ten per cent. of the net profits after charging against plaintiff's contracts the costs and expenses. What is still more to the point, the provision governing contracts entered into during the employment and completed after its determination, deals not with year's results but with individual contracts. As to such contracts the provision is as follows:

"If, at the termination of this contract by either of the parties hereto, a building contract is uncompleted and profits derived from such contract are to be apportioned in accordance with the total time it took for the completion of the contract and such proportion as would be due for the time that the building contract was running during the employment of the said party of the second part, is to be considered a part of the profits of such building contract, upon which is to be rated the ten per cent."

In neither provision is there a suggestion that plaintiff was to bear any part of the burden where the contract resulted in loss. He was simply an employee entitled to receive "as wages" $40 per week and ten per cent. of the profit on any contract which yielded profit; if no profit was realized, as to such contract, the only return he was entitled to for his labor expended in connection therewith, was his weekly wage. The referee's computation for the years 1904 and 1905 dealt with each year's net result, deducting from aggregate profits aggregate losses in each year's contracts and allowing the plaintiff his ten per cent. on the difference, which was simply finding the percentage on contracts showing profits. But manifestly the contract gives no warrant for applying such rules to constructions completed after the term of employment had expired. As to these, plaintiff's compensation, where profit was earned, was

to be measured and determined as of 31st December preceding, apportioning the time required for the completion of the work and allowing the plaintiff such proportion as would be due him for the time of his employment thereon. The computation was to be made "upon the completion" of each contract, showing conclusively, we think, that total net results of all unfinished contracts when the employment ended was not contemplated by the parties; but that what they intended was, that the net result of each unfinished contract when the employment ended—there being no time limit—was to be ascertained without reference to other contracts, and settlement was to be made on such results. This is the view adopted by the referee, and we think it a fair and reasonable interpretation of the contract. In what we have said we have considered the several assignments of error insisted upon in appellant's brief. It only remains to add that in view of our determination of these several questions the costs of this litigation properly fell on the defendant. The assignments of error are overruled and the decree is affirme