## INDIANA VENEER AND LUMBER COMPANY v. HAGEMAN.

[No. 8,255. Filed May 19, 1914. Rehearing denied July 3, 1914. Transfer denied January 20, 1915.]

1. APPEAL.—*Questions Reviewable.—Exceptions to Conclusions of Law.*—The overruling of the demurrer to a complaint need not be considered on appeal, where the exceptions to conclusions of law stated by the trial court are up for review and present the same questions as those involved in the overruling of the demurrer. p. 670.

2. CORPORATIONS.—*Profit-Sharing Contracts.—Construction.*—Under an agreement between a corporation and its salesman by which the latter was entitled "to participate in the profits" of the corporation "*pro rata* with the common stock of the company on the basis of one thousand dollars", such salesman was entitled to share in the profits accruing at the end of each year or contract period regardless of whether dividends were declared; the contract period being from year to year. p. 676.

3. CORPORATIONS.—*"Dividends".—"Profits".*—The term "dividends" and "profits" are not synonymous; dividends being rightly declared only from the profits after they are earned. p. 678.

4. CONTRACTS.—*Construction.—Review.*—The construction given by the parties themselves to an ambiguous contract will generally be accepted; hence the construction given by the trial court to a contract consisting of correspondence and a certain profit-sharing certificate was not erroneous, where it appeared to be in accordance with the construction of the parties as disclosed by the special finding of facts. p. 678.

5. CORPORATIONS.—*Compensation of Agent.—Profit-Sharing Agreement.*—Where a salesman was employed by a corporation for approximately one year at a stated salary for the year and with an agreement whereby he was entitled to participate in the profits of the corporation *pro rata* with the common stock of

Indiana Veneer, etc., Co. v. Hageman—57 Ind. App. 668.

the company on the basis of $1,000, and such employment was continued from year to year with no modification of the contract except as to amount of annual salary, the court did not err in finding the amount due such salesman at the end of each year, especially in view of the established custom of business to ascertain profits and losses at the end of each year. p. 678.

6. MASTER AND SERVANT.—*Contract of Employment.—Modification. —Consideration.*—A special finding of facts showing that plaintiff, who was employed under a contract providing a definite salary for the year, after objecting to a reduction of his salary, finally acquiesced on being informed that a reduction was made in the salaries of all the other employes and officers of the company, etc., did not amount to a rescission of the contract, but was merely an attempted change in the amount of salary which in no way affected his right to recover the amount provided by the contract, in the absence of a finding that some consideration was paid to him on account of such reduction. p. 679.

7. CORPORATIONS.—*Profit-Sharing Contract.—Determining Profits. Depreciation of Property.*—Under a contract entered into with its salesman by a corporation capitalized at $50,000, whereby the salesman was to receive a stated salary and was to participate in the profits of the company *pro rata* with the common stock on the basis of $1,000, it was proper in determining the profits to charge as an item of expense the amount of depreciation in the value of the plant, and to determine the amount due such salesman under the profit-sharing agreement by dividing the amount of profits on the basis of $51,000 capitalization instead of $50,000. p. 680.

8. APPEAL.—*Review.—Presumptions.*—It must be presumed that the trial court's conclusion of law upon a proposition was correct in the absence of anything in the finding of facts to show that it was not warranted. p. 681.

9. CORPORATIONS.—*Profit-Sharing Contracts.—Determining Profits.* —In determining the amount of the profits of a corporation for the purpose of ascertaining the amount due an employe under an agreement entitling him to participate in the profits *pro rata* with the common stockholders, it was proper to charge to expense the money paid out by the company for discount and interest. p. 681.

From Marion Circuit Court (17,951); *Charles Remster,* Judge.

Action by Harmon A. Hageman against the Indiana Veneer and Lumber Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Edgar A. Brown, James A. Kepperley, J. Olias Vanier, John B. Elam, James W. Fesler* and *Harvey J. Elam,* for appellant.

*S. Mahlon Unger,* for appellee.

SHEA, P. J.—Appellee brought this action for an alleged breach of a contract executed by appellant to him for the purpose of allowing him to participate in the profits of its business so long as he remained in its employ under the terms of same. Various paragraphs of complaint, answer and reply were filed. The issues joined were tried by the court, and, upon proper request, a special finding of facts was made and conclusions of law stated thereon. Objections and exceptions to the rulings of the court on appellant's demurrers to the first and second paragraphs of complaint, and appellant's exceptions to each conclusion of law, together with appellee's exceptions to each conclusion of law except No. 7, properly presented by assignment of cross errors, present all the questions necessary to be considered in reaching a conclusion in this case.

It has been held by both this and the Supreme Court that "It is unnecessary to consider the overruling of a demurrer to a complaint, where the court finds the

1. facts and states conclusions of law thereon, and where the exception to the conclusions of law, upon the facts found, presents the same question as the demurrer to the complaint." *Timmonds* v. *Taylor* (1911), 48 Ind. App. 531, 96 N. E. 331, and authorities cited. See, also, *Town of Cicero* v. *Lake Erie, etc., R. Co.* (1913), 52 Ind. App. 298, 97 N. E. 389, and authorities cited.

The facts as found by the court are, in substance, as follows: The Indiana Lumber and Veneer Company was a corporation organized under the laws of Indiana, engaged in the manufacture of lumber and veneer in the city of Indianapolis, Indiana. Appellee was in its employ as a traveling salesman for some years at a salary of $2,000 per

annum and traveling expenses, and on July 13, 1905, the company was indebted to him for his salary for the portion of the month of July, 1905, preceding that date. The company was reorganized and appellant, the Indiana Veneer and Lumber Company was incorporated on July 13, 1905, taking over all the assets and business of the old company, and assuming the payment of the salary due appellee. Appellant was incorporated with a capital of common stock of $50,000, all of which was issued and outstanding in the hands of persons other than appellee, who owned none of such stock and had no interest in it at any time. Appellant engaged in the business for which it was incorporated about July 15, 1905. On July 17, 1905, appellant and appellee entered into a contract by the terms of which appellee agreed to work for appellant as traveling salesman until July 1, 1906, at a salary of $1,800, payable monthly, and traveling expenses, appellant agreeing as further compensation to pay him a share of the profits accruing in its business *pro rata* with the common stock of the company, on the basis of $1,000, on July 1, 1906, unless he should leave its employ prior to that date, executing and delivering to him a certificate as follows:

> "Indianapolis, Ind., July 15, 1905. This certificate entitles Mr. H. A. Hageman to participate in the profits of the Indiana Veneer and Lumber Co. *pro rata* with the common stock of the company on the basis of one thousand dollars ($1,000) to be in force until July 1, 1906, unless holder leaves employ of the company, when it is understood to be terminated. Indiana Veneer and Lumber Co. Per O. M. Pruitt, Pres't."

Appellee entered appellant's employ under said agreement, and performed all conditions on his part until July, 1906. Prior to July 1, 1906, it was agreed that in consideration of appellee continuing to perform services for appellant under the terms of the contract until January 1, 1907, appellant would make his salary $2,000 per annum, payable in monthly installments for and during the year

1906 and during the time he had worked for appellant since July 15, 1905, and this compensation should be extended to January 1, 1907, his compensation under the profit sharing agreement also to be extended until that time. On July 1, 1906, appellee requested an accounting for the profits due him under the agreement, and appellant requested him to consent to the postponement of such accounting until January, 1907, because it would not until that time take an inventory of its assets to determine the profits, to which appellee consented. During the period from July 15, 1905, to December 31, 1905, appellant advanced appellee for compensation and traveling expenses the sum of $2,050, of which he used $1,144.54 for traveling expenses. The lumber sales of appellant during said period as shown by its books on January 1, 1906, aggregated $106,984.55. An inventory taken December 31, 1905, showed property on hand, which, added to said sales made the total assets of the company $174,066.17. Items aggregating $149,066.17 were charged against said assets, among which were $7,854.63 deducted on account of discount for defects in logs, lumber, etc., $130.65 on account of wear and tear of machinery, and $19,717.53 for labor, which included $916.66 on account of appellee's compensation. The court finds that the net amount of profits from July 15, 1905, to January 1, 1906, was $25,000. During 1906 appellant advanced to appellee $5,259 for his compensation and traveling expenses, of which he used $2,896.34 for traveling expenses. The lumber sales of appellant as shown by its books on December 31, 1906, aggregated $308,752.98. An inventory taken December 31, 1906, showed property on hand, which added to the sales, made the total value of appellant's assets $434,198.66. Items aggregating $359,216.20 were charged against said assets, among which were $23,734.56 deducted on account of discount for defects in lumber, veneer, etc., and $54,329.65 for labor, which included $2,000 on account of appellee's compensation. The court finds that the net amount of profits for the

year ending December 31, 1906, was $74,982.46.  On January 26, 1907, appellant declared a dividend on its common stock and paid the owners of same the sum of $50,000 out of the profits which had accrued, and $1,000 of profits in addition to said $50,000 was set apart to appellee as a full *pro rata* share with the common stock holders, for that portion of his compensation evidenced by his certificate.  Said $1,000 was credited to him in the private ledger of the company only, and was not credited to his personal account in the journal or ledger, or any other books kept by appellant, until June 30, 1908, when it carried said credit to the general account of appellee in its books.  Appellee had no actual knowledge that said $1,000 had been credited to his account until the early part of December, 1908, when appellant furnished him a statement of his account on which it appeared. Prior to January 1, 1907, and during the last half of 1906, appellee inquired of appellant the value of his certificate, and was informed that the company was doing nicely and it was worth $1,000.  In April, 1907, appellant agreed that in consideration of appellee leaving his earnings and compensation with the company, it would pay interest at the rate of six per cent per annum on such an amount as he left with it.  In January, 1907, it was agreed between appellee and appellant that the contract of employment and profit-sharing agreement should continue in force and effect during 1907, except that appellee should receive $2,500 per annum, as salary for that year, payable in monthly installments.  During 1907 appellant advanced $5,182.91 to appellee for compensation and traveling expenses, of which he used $2,348.34 for traveling expenses.  The lumber sales of appellant during said period as shown by its books aggregated $274,739.81; discounts were deducted amounting to $1,410.36 and the inventory taken December 31, 1906, showing property valued at $87,844, the total assets of the company were $363,994.17 at that time.  Items amounting to

$363,292.23 were charged up against said assets up to December 31, 1907, among them a charge for labor of $45,599.36 which included the sum of $2,500 on account of compensation to appellee. A charge against the assets of $1,000 designated "traveling expenses of Hageman" is the amount placed to appellee's credit on the private ledger of January 26, 1907, and credited to his individual account in the books of appellant. The total profits during 1907 were $701.94. In January, 1908, appellee and appellant agreed that the contract of employment as set out should continue in force during the year 1908, including the profit-sharing agreement. During 1908, appellant advanced appellee for compensation and traveling expenses the sum of $4,525.20 of which he used $2,014.29 in paying traveling expenses. The lumber sales of appellant during said period as shown by its books aggregated $169,256.99. An inventory taken December 31, 1908, shows property on hand which, added to the sales, makes the total assets $231,630.16. The total charges against the assets amounted to $272,432.05. Total loss for the year as shown by the books $40,801.89. In the charge for labor of $25,677.90 against the assets there was included the sum of $2,333.33 on acount of appellee's compensation. The services of appellee terminated with the year 1908. In January, 1909, appellant paid appellee the sum of $215.23 and in February, $355, on his account. From July 15, 1905, to February 11, 1909, appellee received from appellant the sum of $17,587.34 which was charged to him by appellant. Of this sum traveling expenses were $8,403.51. Certain credits are then set out including an item of "June 30, 1908, credit by profits declared to January·26, 1907, in the principal sum of $1,000, together with $15.75 interest, aggregating $1,015.75." About September 1, 1908, appellant informed appellee that for and during the balance of the year 1908, including September, the conditions of the business made it necessary, and it had decided to make a cut in the salaries of all officers and employes of

the company, and the amount of his compensation would be reduced in the last third of the year 1908 from $2,500 to a basis of $2,000. Appellee at first objected, but later acquiesced when told that the salaries of all officers, salesmen, and office force were being proportionately reduced, and performed his services under said contract during the remainder of the year. Appellant thereupon credited appellee on its books with salary of $2,000 per year instead of at the rate of $2,500 for and during the months of September, October, November and December; that about December 1, 1908, appellee, on appellant's request furnished it a statement of his account against the company for the purpose of forming basis of settlement with it, wherein it was shown that he claimed from the company salary for the months of September, October, November and December of said year at the rate of $2,000 per annum; that at the time of acquiescing in the reduction of the fixed salary in September, and up to and including the time of rendering the statement last mentioned, appellee believed that appellant "had the legal right to so reduce such fixed compensation, and accepted such reduction, and performed said labor, under the belief that the defendant (appellant) had the legal right to make such reduction in such fixed salary." Prior to the commencement of this action appellee demanded of appellant an accounting of the profits of the company for the periods from July 15, 1905, to December 31, 1906; January 1, 1907, to December 31, 1907, and January 1, 1908, to December 31, 1908, but appellant refused such demand and denied all liability to appellee on account of any such profits by reason of the profit-sharing agreement, as a part of his compensation, or on account of any claim whatsoever in his favor.

Upon these facts the court stated its conclusions of law to be: (1) That the profits accruing to appellant in the conduct of its business from July 13, to December 31, 1905, aggregated the sum of $25,000; (2) during the year 1906,

$74,982.46; (3) during 1907, $701.94; (4) that there were no profits in 1908, but the loss sustained during that year aggregated $40,801.89; (5) that appellee is entitled to recover the one-fifty-first portion of said profits, less the sum of $1,000 paid thereon, namely, $974.20; (6) that appellee is entitled to recover interest thereon as follows:

On the sum of $960.44, the one-fifty-first part of the profits for 1905 and 1906, at the rate of 6% per annum from April 15, 1907 to October 15, 1911......$259.31

On the sum of $13.76, the one-fifty-first part of the profits for 1907, at the rate of 6% per annum from January 1, 1908 to October 15, 1911.............  3.10

                                                                                      $262.41

Less interest paid in the sum of.................  70.00

                                                                                      $192.41

(7) That appellee is entitled to recover for unpaid salary for the months of September, October, November and December, 1908, $166.66 and interest on said amount from January 1, 1909, to October 15, 1911, $27.90; (8) that upon the facts found the law is with appellee and he should recover of appellant the sum of $1,361.17 and costs of this action; (9) that appellee is not entitled to have the profits augmented by deducting from the charges against the assets the moneys paid out for insurance, the amounts paid him, and depreciation of plant, discount, and interest paid on borrowed money. Judgment was rendered in accordance with the findings and conclusions of law.

It is very earnestly urged by appellant's learned counsel that the profit-sharing agreement entered into between the parties entitled appellee to share in the profits only 2. as dividends were declared and paid to the stockholders, thus placing appellee upon the same basis with respect to profits and dividends as the stockholders in

the corporation. Thus reasoning, appellant concludes that until such time and only at such times as dividends were declared, could appellee rightly claim any interest in the profits earned. The fallacy of this position seems to be obvious. It would lodge in the hands of the corporation the power absolutely to prevent the payment of profits actually earned, to appellee, by refusing to declare dividends, and appellee not being in fact a stockholder, would be helpless to demand relief in the courts unless he can enforce his claim upon the theory that he is entitled to share in the profits at the end of each year or contract period, regardless of the time of declaring dividends. It will be observed that the contract period is from year to year, never for a longer period.

The case of *Clapp* v. *Astor* (1834), 2 Edw. Ch. (N. Y.) 379, cited by appellant is readily distinguishable in its facts from the present case. In that case, Clapp, under an agreement for a stipulated salary, was engaged to serve defendant (Astor) in charge of his business in New York. In addition to the salary paid, complainant was to receive the profits and dividends and sustain the loss, if any, on ten shares of stock transferred to him by John Jacob Astor. The next year a new contract was made, increasing the salary of complainant, with duty on his part of acting as defendant's agent in China, where he remained eighteen months. After his return he transferred the ten shares of stock to defendant. There was no dividend declared or paid during the time complainant held the stock in his name. Afterward a dividend of 100% was declared. The finding was against complainant upon the theory, principally, that the net profits could not be ascertained for the period the stock was held by complainant. No such difficulty appears in the case under consideration, as the court has found specifically the amount of profits, gross and net, for each year, from which appellee's share can be readily ascertained. Dividends are declared rightly only from the profits after they are earned.

Appellee in this case, by his contract, was entitled to share in the profits. The terms "profits" and "dividends" are not synonymous. *City of Allegheny* v. *Pittsburgh, etc., R. Co.* (1897), 179 Pa. St. 414, 36 Atl. 161; *Hawley* v. *Kansas, etc., Coal Co.* (1892), 48 Kan. 593, 30 Pac. 14.

We can see no error in the court's construction of the letters and so-called certificate given by appellant to appellee, which constitute the contract between the parties.

4. Indeed, this seems to have been the construction of the parties themselves, as it is shown in the finding of facts that at each time appellee made inquiry concerning his share of the profits, he was put off by some statement concerning the time of invoice, and he was never informed until the time of final settlement came, of appellant's theory that he would be entitled to no further profits because no dividend had been declared. The case of *Scase* v. *Gillette-Herzog Mfg. Co.* (1893), 55 Minn. 349, 57 N. W. 58, fully supports this doctrine. We think the court adopted the construction of the contract intended and acted on by the parties themselves. Where there are ambiguities in a contract, the construction given it by the parties themselves will generally be accepted. *Patterson* v. *State Bank, etc.* (1914), 55 Ind. App. 331, 102 N. E. 880, and authorities there cited.

It is next complained that the court erred in finding the amount due appellee at the end of each year of his employment. We think this finding of the court is fully sustained by the agreement, as well as the acts of the parties. It also finds approval in the case of *Scase* v. *Gillette-Herzog Mfg. Co., supra.* It is also a well-established custom of business that an invoice and casting of accounts is taken at the end of each year for the purpose of ascertaining the profit or loss, as the case may be, and we see no error of the court in adopting this method in the present case. We think it was manifestly not intended by

the parties that in case of loss in one year, it should be charged against the profits of other years, as contended by appellant.

Objection is also urged to the seventh conclusion of law, which finds that appellee is entitled to recover unpaid salary for the months of September, October, November and December, 1908, amounting to $166.66, with interest to October 15, 1911, $27.90. The facts upon which this conclusion is based are set out in finding No. 15, and are, in substance that appellant, on September 1, 1908, informed appellee that for the balance of the year the conditions of business made it necessary, and appellant had decided, to cut all salaries of its officers and salaried employes, cutting appellee to a basis of $2,000 per year; that appellee at first objected, but upon being told that all the officers and salaried employes received the same cut, he acquiesced, and that he was paid on that basis; that on December 1, appellee upon being requested by appellant to furnish a statement of his account against it, did so furnish such statement for the basis of a settlement with the company, wherein he fixed his salary for those four months on the basis of $2,000 per year; that at the time he acquiesced and up to the time he furnished such statement, he believed appellant had the legal right to reduce such fixed compensation, and accepted such reduction and performed said labor under the belief that appellant had the legal right to make such reduction in such fixed salary.

Under appellant's points nine, ten and eleven this question is presented. There is much argument and citation of authority to support the theory that there was a mutual rescission of the contract of employment at $2,500 per year, and a new contract made at $2,000 per year. If this was done, appellant is correct in its theory, and the authorities sustain it. *Ralya* v. *Atkins & Co.* (1901), 157 Ind. 331, 61 N. E. 726, and authorities cited. It is the theory of appellee, however, that there was no rescission of the contract,

but merely an arbitrary reduction of the amount of appellee's salary by appellant without any consultation, and with no consideration passing to appellee, to which he reluctantly assented upon being informed that a like reduction was made in all salaries. This theory, if applicable to the facts, is sustained by authority.

The facts disclosed here do not constitute a recission, but merely a change in the amount of salary to be paid appellee, upon a misapprehension of the facts in so far as he was concerned, as the findings in this case disclose. In order to obtain a change in the contract reducing appellee's salary, some consideration must pass therefor. Appellee had a valid contract for the four months in question at the rate of $2,500 per annum. Under the issues the burden was upon appellant to prove a consideration. The findings do not affirmatively show that there was any consideration paid appellee for this reduction. It was, therefore, void, and the law was correctly stated in the court's conclusion No. 7. *Reynolds* v. *Nugent* (1865), 25 Ind. 328; 1 Beach, Contracts §157; Clark, Contracts §§184, 188.

Appellee in support of his assignment of cross errors very earnesly insists that the trial court erred: (a) In estimating appellee's share of the profits at one-fifty-first part instead of the one-fiftieth part thereof; (b) appellee is entitled to have the profits augmented to the extent of depreciation for machinery and merchandise; unearned portions of amounts paid out for insurance; moneys paid out as discount and interest on borrowed money, and the amount of $1,000 charged to expense account, which was in fact a portion of the amount due appellee on his profit sharing agreement. On the question of the basis of the division of the profits we think the conclusion of the trial court was the correct one, in view of the peculiar language of the contract, which is that appellee should share *"pro rata"* with the stockholders in the division of the profits, therefore for the purpose of a division of

the profits the calculation must be upon the basis of $51,000 of capital stock instead of $50,000. The item of depreciation in the value of the plant, under the modern rule of business, is properly an expense charge, and no error was committed in so holding. There is no finding as to how much, if any amount of money paid out for insurance, was unearned. We must therefore presume that the conclusion of the lower court is correct. No substantial error was committed in charging the $1,000 item to appellee upon his profit sharing agreement, against the assets of the company.

There is much argument upon the question as to the money paid out for discount and interest being charged as an item of expense. We are convinced, in all fairness, that in this case at least, this was a proper charge, as the capital of the concern was augmented to the extent of the borrowed money, and therefore its working efficiency greatly increased, which resulted in an increase in the profits in which appellee was entitled to share, therefore he is in no position to complain because of the charge of this item as a part of the expense account.

The presumption is that the trial court made a correct finding. We find no error presented which warrants a reversal of this cause upon either the errors or cross errors assigned.

Judgment affirmed.

Note.—Reported in 105 N. E. 253. As to contracts between master and servant for permanent employment, see 51 Am. St. 301. As to legal meaning of word "profits", see 20 Ann. Cas. 683.