Lloyd E. DIXON, Appellant
(Plaintiff below),

v.

J. W. RINGSBY, Jane V. Ringsby, N Cross Ranch, Inc., J. W. Ringsby, Jane V. Ringsby, and John F. Mueller, as surviving and last directors and trustees of N Cross Ranch, Inc., a dissolved Wyoming corporation, Appellees (Defendants below).

No. 3310.

Supreme Court of Wyoming.

Sept. 7, 1965.

J. Reuel Armstrong, K. W. Keldsen, Rawlins, for appellant.

Oscar A. Hall, Rawlins, for appellees.

Before PARKER, C. J., and HARNS-BERGER, GRAY, and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Lloyd E. Dixon, plaintiff, sought an accounting on a profit-sharing agreement from the owners of a cattle ranch known as the N Cross Ranch in Carbon and Albany Counties, Wyoming. The district court denied relief and Dixon has appealed.

Dixon's complaint alleged an oral agreement with the owners of the ranch under

which he was to manage the ranch and receive as compensation for his services $500 per month plus 20 percent of the annual profits made by the ranch before income tax. The trial court found, and there was ample evidence to justify such finding, that the parties did enter into a contract "as alleged" in plaintiff's complaint.

In view of this justifiable finding, we will assume—for purposes of our decision—that the contract was "as alleged." In other words the agreement was for a salary of $500 per month plus 20 percent of the "annual profits" made by the ranch before income tax. A second finding of the court was to the effect that any reasonable interpretation of the contract would not produce a recovery for plaintiff.

Our decision turns upon the meaning of the term "annual profits" as used in the agreement. The undisputed evidence and admission of parties discloses an over-all loss and no profit for all the years Dixon managed the ranch, the years of 1953 to 1958 inclusive. During 1957 and 1958 a certain liquidation took place and breeding stock was sold. By counting the proceeds of the liquidation sales as income for the years in which such sales were made, a profit is reflected, at least for 1958.

The ranch owners claim the losses were to accumulate and be deducted from future profits. This would give no significance to the word "annual" in the term "annual profits." The result would be to make the contract for $500 per month plus 20 percent of the "profits"—the word "annual" being omitted.

On the other hand, Dixon claims all proceeds from the sale of breeding stock should be counted as income for the year in which the sales were made. Thus, for example, a profit of $299,000 for the year 1958, which is reflected by bookkeeping on a cash basis, would entitle Dixon to receive 20 percent of that amount.

We think neither contention is entirely correct. The term "annual profits" could not reasonably mean anything except the profits every year. But the word

"profits" denotes gain, benefit or advantage which does not necessarily have to be in money. Thus, profits may occur prior to the dates on which sales are made.

### Annual Profits

If we give full meaning to the word "annual" in the term "annual profits," we cannot accept the theory of appellee-owners that losses should accumulate and be deducted from future profits. Suppose the large profit which is reflected for 1958 had occurred in the earlier years of Dixon's management and he had been paid his 20 percent bonus for each year showing a profit. Then if subsequent years reflected losses, would the owners have a cause of action against Dixon for overpayment?

In McFarland v. Gillioz, 327 Mo. 690, 37 S.W.2d 911, 915, the court in a similar case asked this question and concluded the contract would not admit of that interpretation. Other cases cited by appellant and which hold generally, under similar agreements, that the employer cannot charge the losses of earlier years against the profits of later years include these: City of Wheeling v. Chester, 3 Cir., 134 F.2d 759, 762; Bernstein v. Sirotta, 213 Cal. 21, 1 P.2d 8, 10; Indiana Veneer & Lumber Co. v. Hageman, 57 Ind.App. 668, 105 N.E. 253, 257; and Hager v. Reilly, 241 Pa. 297, 88 A. 492, 493.

We think the logic of these cases is sound, and in the case before us Dixon would be entitled to receive 20 percent of any profit before income tax, for any year in which an actual profit was made by the ranch, without being charged for the losses of prior years.

### Computation of Profits

Counsel for appellant admits all of the accountants who testified in this case agreed an accrual method of bookkeeping is better for a livestock business, but that a cash basis is acceptable and was used by the owners. It is appellant's contention that a cash method of bookkeeping was used and therefore the 20 percent due him should be computed on that basis.

When accountants testified that a cash method of bookkeeping for a livestock business is acceptable, they may have meant only that it was acceptable to the internal revenue service of the Federal Government, for federal income tax returns. The accountants, of course, were not qualified to say whether such a method of bookkeeping was a part of the agreement here involved.

It must be remembered, as appellant himself states, this is not an income-tax case. Our attention is called to Harvey v. Missouri Valley Electric Co., Mo., 268 S. W.2d 820, 821, 49 A.L.R.2d 1124. Appellant's attorney quotes from that case the following, which we think is apropos to the situation confronting us:

" * * * Income taxwise, defendant's argument is sound. But in our view, the problem is not so simple. It does not necessarily follow that because the profit-sharing bonus payments are compensation, and that payment of such compensation is a deductible item in the year paid in computing 'net profits' for income tax purposes, that such payments are necessarily deductible in computing the amount due under a profit-sharing bonus plan."

The findings of the trial court, in the case at bar, do not indicate whether an express or implied agreement between the parties was considered to exist, with ·respect to the manner in which profits were to be determined.

█ If there was an agreement, either express or implied, that the profits be determined by a cash method, then an accounting should be made for each year upon that basis. On the other hand, if there was an agreement, either express or implied, for profits to be determined upon an accrual basis, then the accounting should be made upon that basis. If there was no agreement at all as to the manner in which profits were to be determined, nevertheless an accounting must be had on some basis which will disclose whether in any

year of Dixon's management a profit before income tax was made and the amount thereof.

In Commissioners of Cambria Park v. Board of County Com'rs of Weston County, 62 Wyo. 446, 174 P.2d 402, 414, this court adopted a definition for "profit," which included the idea of accession of good, valuable results, gain, or advantage. We think the discussion of this matter in Shields v. Rancho Buena Ventura, 38 Cal. App. 696, 177 P. 499, 502; Id., 187 Cal. 569, 203 P. 114, is helpful. The court in that case said it did not mean to intimate that net proceeds referred to in the contract meant "actual cash" arising from sales of produce of the ranch. It treated as proceeds, not only money received from actual sales of produce, but the increased value of stock or produce on hand at the end of a given year over the value of stock or produce on hand at the end of the preceding year.

█ Many cases could be cited for recognition of the theory that profits can be in kind. We do not consider it necessary to review them. In this instance it appears from the evidence that breeding stock was an integral part of the N Cross Ranch. If the court finds, after an accounting in accordance with what we have indicated, that profits either in kind or in money were gained during any year of Dixon's management, then and in that event he should be allowed his profit sharing of 20 percent for such year or years.

### Sale of Ranch

Dixon has claimed, in a second cause of action, that the N Cross Ranch was sold through his efforts; that he had an oral agreement with the owners for a commission of $100,000 in the event Dixon located a buyer who would pay $1,000,000 for the ranch real property. The court found no such agreement was entered into, and additionally no such agreement would be enforceable under Wyoming's real estate statutes.

■ As far as the trial court's finding of fact is concerned, the evidence was clearly in conflict and we will not disturb such finding. Also, it is at least doubtful whether such an agreement, if one had been made, would be enforceable in favor of Dixon, who admittedly did not have a real estate license.

Section 33–350, W.S.1957, provides no person acting in the capacity of a real estate broker or salesman shall bring an action for compensation for such services without alleging and proving that he was duly licensed as such broker or salesman at the time the alleged cause of action arose. Plaintiff relies upon the exception in § 33–344, W.S.1957, of the real estate act, which says the provisions of the act shall not apply to the regular employees of the owner of property, "where such acts are performed in the regular course of, or as an incident to the management of such property and the investment therein."

In Owens v. Capri, 65 Wyo. 325, 202 P.2d 174, 183, our court said one whose regular business was that of cattle buyer, but who acted in a single real estate transaction, was a "broker" within the licensing statute and was not entitled to enforce an oral agreement for commission. It follows, that if one is in the business of raising cattle and, in a single real estate transaction, participates in the sale of real estate, he would be a broker in the same sense in which Owens, in the case of Owens v. Capri, was declared to be a "broker," unless he has an exemption.

According to § 33–344, a "broker," by definition, is not only one who sells, buys or exchanges real estate, he is also one who leases or rents real estate. It is understandable that an employee of an owner might rent property in the regular course of managing such property, or as an incident to such management; but it has not been satisfactorily explained how the sale of the N Cross Ranch was in the regular course of its management, or an incident to such management.

■ The statutes requiring that brokers be licensed as a prerequisite to their recovering compensation were intended to protect landowners from fictitious claims. Cochran v. Ellsworth, 126 Cal.App.2d 429, 272 P.2d 904, 909. The nature of Dixon's employment was such that there would be no logical reason for him to be exempted from the provisions of the act, and the purposes of the act would not be served by allowing his claim of exemption.

The demand for commission arises under a separate contract, supposedly entered into at a different time and place from the contract of employment as manager of the ranch. If such a contract were made, it would constitute a listing of real property with Dixon as a broker, entirely separate and apart from his employment in the cattle-raising business.

■ Such a contract would be illegal, and no action could be maintained thereon, if the act pertaining to real estate brokers is a valid enactment. See Hunter v. Cunning, 176 Or. 250, 154 P.2d 562, 157 P.2d 510, 512. No question concerning the validity of the laws pertaining to real estate brokers has been raised in the case before us.

The judgment of the district court is affirmed with respect to plaintiff's second cause of action. It is reversed and remanded for further proceedings consistent with the views herein expressed, on the first cause of action.

Affirmed in part; reversed in part and remanded.