**J. W. RINGSBY et al., Appellants (Defendants below),**

v.

**Lloyd E. DIXON, Appellee (Plaintiff below).**

**No. 4018.**

Supreme Court of Wyoming.

May 1, 1972.

Rehearing Denied June 7, 1972.

Oscar A. Hall, Rawlins, for appellants.

K. W. Keldsen, Rawlins, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

PER CURIAM.

Mr. Justice Parker and Mr. Justice McEwan are of the opinion the judgment of the district court should be modified by entering judgment for the plaintiff and against the defendants in the principal amount of $50,016.06.

Chief Justice McIntyre and Mr. Justice Guthrie are of the opinion the judgment of the district court should be modified by entering judgment for the plaintiff and against the defendants in the principal amount of $8,308.78.

The court being evenly divided with respect to whether the judgment should be for $50,016.06 or $8,308.78, the judgment of the district court stands affirmed insofar as, and only insofar as, it allows judgment in the principal amount of $50,016.06. Insofar as it allows judgment in excess of that amount, it is reversed.

The opinion of Mr. Justice McEwan, in which Mr. Justice Parker joins, is attached as Appendix A. The opinion of Chief Justice McIntyre, in which Mr. Justice Guthrie joins, is attached as Appendix B.

APPENDIX A

Mr. Justice McEWAN.

This case was before us previously and is reported in 405 P.2d 271. In that decision we dealt with an oral contract between Lloyd E. Dixon, plaintiff, and the owners of a cattle ranch known as the N Cross Ranch in Carbon and Albany Counties, Wyoming. According to the contract, Dixon was to manage the ranch and receive as compensation for his services $500 per month plus 20 percent of the annual profits made by the ranch before income taxes.

We pointed out in our former decision that the undisputed evidence and admissions of parties disclosed an over-all loss and no profit for all the years Dixon managed the ranch, which included the years 1953 through 1958. During 1957 and 1958 a certain liquidation took place and all livestock, including the breed herd, was sold. By counting the proceeds of the liquidation sales as income for the years in which such sales were made a profit was reflected, at least for 1958, with some doubt about 1957, and losses in all other years.

The ranch owners claimed the losses were to accumulate and be deducted from future profits. We held otherwise and said Dixon was entitled to 20 percent of

the profit for the years when there was a profit, irrespective of losses in other years. The ranch owners now accept that proposition and are not seeking to accumulate losses.

The figures argued on behalf of Dixon in the brief submitted for him when the case was first before us indicated losses and profits as follows:

| "1953 | Loss | | $ 23,201.11 | |
|-------|------|--|-------------|--|
| 1954 | Loss | | 59,413.69 | |
| 1955 | Loss | | 100,039.66 | |
| 1956 | Loss | | 160,053.08 | |
| 1957 June 14, | Loss | | 58,892.93 | |
| 1957 June 14 to Dec. 31 | | Profit, | $ 4,588.50 | |
| 1958 | | Profit, | 299,002.67" | |

Dixon's claim was that these figures were from profit and loss statements prepared by the ranch owners. Dixon accepted such figures as correct and offered nothing in contradiction of them.

After this case was returned to the district court, with our previous mandate, the court appointed a master, Elmer M. Likes, CPA, to assist the court in determining the questions which seemed to be involved. Likes made a report to the court and also testified at the time of the subsequent hearing. He made it clear in his testimony that his figures were the same as the figures which were before the court in the original trial. These are the figures we have heretofore referred to as relied on by Dixon in his first appeal. Likes explained that he was merely trying to set up the information for the court so the court could make its own decision.

As we said in the prior opinion, upon remand to the trial court it was to determine if there was an agreement as to the accounting method to be used, and if there was no such agreement the trial court should nevertheless determine an accounting on some basis which would disclose whether in any year of Dixon's management a profit before income tax was made, and the amount thereof. We also said at page 274:

"* * * If the court finds, after an accounting in accordance with what we have indicated, that profits either in kind or in money were gained during any year of Dixon's management, then and in that event he should be allowed his profit sharing of 20 percent for such year or years."

After further hearing upon remand the trial court concluded that the parties did not consciously intend to use any particular method for figuring profit under the agreement. The trial court further found that the fairest it could be—and the closest to the probable intent—was to leave the parties where they placed themselves when they used and tacitly assented to the hybrid cash method of accounting. The court further found it impossible to apply a full accrual method except as a rough approximation.

It is of interest to note that the two profit figures shown above for the years 1957 and 1958 total $303,591.17. The trial court's finding, after further consideration of the case, was that Dixon was entitled to judgment for 20 percent of $303,591.17. Judgment was therefore rendered in his favor in the amount of $60,718.23, plus interest and costs. We hold the trial court was correct in its findings, which were supported by substantial evidence, except as to its treatment of depreciation as hereafter detailed.

The ranch owners stated in their brief that the " * * * sole point for modification is: 1. SALE OF BREED HERD WAS NOT ANNUAL PROFIT FOR THE YEAR 1958." They then seemed to limit their contention and argued that Dixon should not participate in the profit on the sale of purchased breed animals. Examination of the record reveals that there is no way to tell which of the breed animals sold were raised and which were purchased. The testimony indicates that some of the breeding stock were raised animals and some were purchased. Even if we agree that Dixon is not entitled to share in any gain upon the sale of the purchased breed animals, we find no way that such gain could be determined. In any event, as we shall later discuss under the topic of depreciation, we think there would be no gain,

or if there was a gain it would be minimal, if depreciation was eliminated from the accounting. It is also noted that one of the ranch owners' witnesses testified that depreciation was taken only on the herd animals that were purchased.

The ranch owners point out that one of their witnesses, an accountant, eliminated depreciation figures on the livestock and that he did so in order to arrive at an accounting as anticipated by this court when it remanded the case. We think the ranch owners are correct in this contention. It appears that depreciation was used by the ranch owners for purposes of computing taxable income and, as we said in the prior opinion, this is not an income tax case and the annual profits are to be determined before income taxes. Depreciation here was a mere accounting charge and did not represent actual expenditures of money. Depreciation on the livestock taken in one year would reflect upon the profit or loss in subsequent years when the cattle were sold. Depreciation reduced the profits or increased the losses in the year in which the depreciation was taken, and increased the profits or reduced the losses in the year in which the depreciated livestock sold. Thus, if depreciation was used it would, in effect, accumulate in one year something from another year. There were losses in all years prior to 1957, which losses exceeded depreciation taken. Therefore, the depreciation charges in the years when taken should be eliminated for determining if there was a profit, and such depreciation previously taken should be eliminated from the reduction of the cost of sales in the years in which sales were made. When this is done it reveals, upon using the ranch owners' own financial statements, that there were no profits in any of the years of Dixon's management except the year 1958. In the final year when complete liquidation took place the amount for depreciation previously taken was $48,922.35, by which figure the cost of sales of livestock was reduced for the year 1958. This meant that the profits were increased by the sum of $48,922.35.

In effect, Dixon received judgment for 20 percent of this sum. We think it improper and inequitable for the trial court to have included in the profits this item of depreciation. The profit for the period ending in 1958 was shown as $299,022.67, and should be reduced by $48,922.35, to the sum of $250,080.32.

The cause should be remanded with instructions to the trial court to enter judgment for Dixon for 20 percent of $250,080.32, being the sum of $50,016.06.

## APPENDIX B

McINTYRE, Chief Justice.

This case was before us previously and is reported in 405 P.2d 271. In that decision we dealt with an oral contract between Lloyd E. Dixon, plaintiff, and the owners of a cattle ranch known as the N Cross Ranch in Carbon and Albany Counties, Wyoming. According to the contract, Dixon was to manage the ranch and receive as compensation for his services $500 per month plus 20 percent of the annual profits made by the ranch before income taxes.

We pointed out, in our former decision, that the undisputed evidence and admissions of parties disclosed an over-all loss and no profit for all the years Dixon managed the ranch, which included the years 1953 through 1958. During 1957 and 1958 a certain liquidation took place and breeding stock was sold. By counting the proceeds of the liquidation sales as income for the years in which such sales were made, a profit was reflected, at least for 1958. We said there was some doubt about 1957 and there were losses in all other years.

The ranch owners claimed the losses were to accumulate and be deducted from future profits. We held otherwise and said Dixon was entitled to 20 percent of the profit for the years when there was a profit, irrespective of losses in other years. The ranch owners now accept that proposition and are not seeking to accumulate losses.

On the other hand, as we pointed out in our previous opinion (at 405 P.2d 273),

Dixon claims all proceeds from the sale of breeding stock should be counted as income for the year in which the sales were made. For example, a profit of $299,000 for the year 1958, which is reflected by bookkeeping on a "cash basis," would entitle Dixon to receive 20 percent of that amount.

Referring to the contention of the owners about cumulating profits and to the contention of Dixon about figuring his profit on the "cash basis" of bookkeeping which had been used, we said we think neither contention is entirely correct. We then pointed out, also on page 273, that the accountants agreed an "accrual method" of bookkeeping is better for a livestock business but a "cash basis" is acceptable and that method had been used. We then said, it is Dixon's contention that a cash method of bookkeeping was used and therefore the 20 percent due him should be computed on that basis.

At 405 P.2d 274, we opined, when accountants testified a cash method of bookkeeping for a livestock business is acceptable, they may have meant only that it was acceptable to the Internal Revenue Service of the Federal Government, for income tax returns. We said the accountants were not qualified to say whether such a method of bookkeeping was a part of the agreement between the owners and Dixon.

We also said the findings of the trial court did not indicate whether an express or implied agreement between the parties was considered to exist, with respect to the manner in which profits were to be determined. Our conclusion was, if there was no agreement as to the manner in which "profits" were to be determined, an accounting must nevertheless be had on some basis which will disclose whether in any year of Dixon's management a profit was made and the amount thereof.

As the record now exists, after a further hearing by the district court, it is clear (as we indicated previously) books had actually been kept on a "cash basis." It would be fair to say that was by mutual agreement. However, it is equally clear from the record that there was no agreement, express or implied, with respect to the manner in which "profits" for purposes of Dixon's contract were to be determined.

It appears from the entire record and from findings of the trial court that Dixon has continued to claim under the "cash basis" bookkeeping figures which were previously before us. As a matter of fact, it would seem the trial court has taken the 1958 cash-basis figure of $299,002.67 and added to it a cash-basis profit figure of $4,588.50 for the last half of 1957. That made a total profit figure of $303,591.17. The judgment of the district court was for 20 percent of $303,591.17. It wholly ignores the fact that there was a loss of $58,892.93 during the first half of 1957, making that year a loss year.

While Dixon, the plaintiff, has done nothing to convert the original "cash basis" figures previously before us to something which would reflect "annual" profits on an accrual basis, accountants for the defendants have undertaken to do so. We held with Dixon in our previous opinion to the effect that "annual profits" could not reasonably mean anything except the profits for each year. However, we further held "profits" could be in kind and consequently profits may occur prior to the dates on which sales are made. See 405 P.2d 273.

According to the defendants' accountants, they prepared numerous charts and tabulations in a manner which would meet the requirements set out in our original opinion. In doing so, they included inventory figures of livestock for the various years involved. Estimated figures for the value of animals in the respective categories were ascribed. For example, a figure of $200 was assigned to each animal that was raised and inventoried prior to sale of the breeding herd; a figure of $100 was assigned to the livestock that was raised and still on hand; and the balance of the animals were valued at $200 each.

Admittedly, these figures were arbitrary or average figures. However, Dixon made no objection to statements submitted to him with these average figures. He has offered no evidence to show that the values used were too high or too low and he, as

plaintiff, has failed to come up with any better or different figures.

We need to concern ourselves only with a possible profit for the first half of 1958. No profit is claimed on behalf of Dixon for any other year and it is clear from the evidence that all assets had been sold by the middle of 1958.

With respect to the first half of 1958, it is undisputed in the evidence that the gross sales in that period were $396,609.78. The inventory cost to be deducted from the gross sales, according to Frank Talmadge, bookkeeper and accountant for the defendants, was $331,145.10. This inventory cost figure was arrived at by converting the bookkeeping to a system which would reflect "annual" accruals when profits in kind were considered.

No figure has been offered on behalf of Dixon for the 1958 inventory cost, figured on an annual basis, with profits in kind being reflected. Therefore, if we accept the defendants' figure for the inventory cost to be deducted from the gross sales in 1958, the gross profit would be $65,464.68.

There was "other income" of $6,916.45, bringing the gross up to a total of $72,-381.13. However, operating expenses less livestock depreciation was $30,837.24. Thus, on the basis of the accounting made for defendants by their bookkeeper and accountant Talmadge, the profit for the period of January 1, 1958 to June 30, 1958 was $72,381.13 gross profit minus $30,837.24 expenses, or a profit of $41,543.89.

In addition to the testimony of Talmadge, another accountant, Marvin Stone, testified concerning profits in connection with which Dixon is entitled to claim a percentage. He had reviewed the books kept by Talmadge and the reports made by Talmadge in connection with such books. Stone testified that he had read and carefully analyzed our former decision; and that he then undertook to apply the figures in a manner to reflect the requirements of our former opinion.

According to Stone, he made an adjustment for the value of raised cattle on hand at the end of each year and at the beginning of each year; his tabulations reflected accruals rather than cash from year to year; and he allowed for profits in kind as well as in cash. After making adjustments in this manner, Stone came up with a profit figure which was even less than that arrived at by Talmadge.

After this case was returned to the district court, with our previous mandate, the court appointed a master, Elmer M. Likes, CPS, to assist the court in determining the questions which seemed to be involved. Likes made a report to the court and also testified at the time of the subsequent hearing. He made it clear in his testimony that his figures were the same as the figures which were before the court in the original trial. These are the figures we have heretofore referred to as the figures relied on by Dixon when he appealed. Likes explained that he was merely trying to set up the information for the court so the court could make its own decision.

In his report, Likes stated that the method originally used for bookkeeping was neither strict cash nor accrual but a combination of the two methods, commonly known as a "hybrid" cash method. He reported that the method is commonly used for livestock income tax returns in order to defer the payment of tax liability until such time as income is realized in cash or the operation is completed.

Thus, according to Likes' report, while the method of bookkeeping which was used is acceptable to the Internal Revenue Service, "it does not reflect profit *each year* under generally accepted accounting procedures." [Emphasis supplied.]

In order to make a determination "each year" in accordance with generally accepted accounting principles and procedures, Likes reported, it would "require the books to be adjusted to an accrual basis." That, of course, is what the accountants for the

Ringsbys have done and what Dixon still refuses to do. The following excerpt from Likes' report is significant:

"Such adjustment would be difficult at this late date and would necessitate a rather detailed examination of the books and supporting documents to determine the period to which the income and expense applied, rather than to the period in which payment was received or made. Also it would be necessary to assign an *arbitrary (estimated)* value (cost of raising or fair market value) to the raised animals on hand at the end of each year." [Emphasis supplied.]

Likes pointed out in his report that raised animals were not reflected either in numbers or value on the original balance sheets. As we have indicated, however, they are taken into consideration in the subsequent accountings of Talmadge and Stone.

During the direct examination of Likes, at the last district court hearing, he was asked the following question:

"From an examination of the accounting and records in the case and in accordance with the Supreme Court's decision, saying you did not calculate the losses, do you have an opinion as to the amount that is shown by the books, that the twenty per cent profit-sharing figure is to be applied?"

His reply was:

"Well, you asked me yes or no, and that is the way I am inclined to answer it, but I am not sure it can be answered. I think one of the first things, I mean, Your Honor, it is difficult for me to answer this question or to explain an opinion until the Court decides the items that are to be considered in arriving at these figures itself. There was no mention in the depreciation itself as to how this charge would be handled and it seems to me that before I, as an accountant, could answer this, unless we knew what is to be considered, it is putting me on the spot. It is yes if it is one thing, and it is no if it is another thing. I think before this could be settled, it is going to be up to the Court and the individuals to come to an agreement as to what is going to be considered. This is the way I see it."

We construe this testimony of Likes to mean that he had no basis for determining anything except what was shown on the books about income for 1958, on a "cash basis." As we have previously indicated, that is not sufficient or helpful. Likes expressly testified, on further examination, that bookkeeping on a "cash basis" would entitle Dixon to 20 percent of the gross proceeds from the sale of breeding stock, for the year 1958. He had already made it clear, however, that he expected the court to say whether that or something else was wanted. The witness admitted it would be a good accounting procedure for Dixon not to get 20 percent of the final sale figure in the final year of 1958.

Dixon seems quite willing to accept the benefit of our holding in our former decision that profits are to be determined each year or on an "annual" basis. He overlooks the part, however, which held that such profits could be in cash or kind. This necessarily means, as Likes has made clear, that such "would require the books to be adjusted to an accrual basis."

Another witness who testified as an expert for plaintiff-Dixon was Harold Rand. He had prepared himself by a two-hour examination of the records in the Denver office of Talmadge. He concluded it is impossible to put the books on a *complete* accrual basis. Although admitting there was information about inventories of raised livestock in Talmadge's work sheets, there is no indication Rand examined these. When directly asked if he could, by spending more time, go back and ascribe values in the years when these various items should have been represented, he answered: "Then you would be substituting one hybrid system for another."

Thus, it appears the system rather than the question of profits seems to have been the focus of Rand's inquiry. He did testify that if such a system were employed it would more accurately represent the profits

in the year in which it was realized rather than bunching it all in the one year. He also said the gain of $357,000 reported on the books or statements as of June 30, 1958, was not "annual profit" for the year but something realized in prior years.

Both Likes and Rand were witnesses for Dixon, and Dixon ought to be bound by their testimony. Each of them indicated the system of accounting relied on by them did not reflect annual profit.

Counsel for Dixon claims there was no showing with respect to livestock which had been raised; that it is impossible now to put the accounting on an "accrual basis"; and that there were no inventories. He criticizes certain statements made by the accountants and bookkeeper, and particularly the use of arbitrary figures for the value of livestock on hand.

These arguments seem to overlook that Dixon himself is plaintiff and has some responsibility for proof. The accountings made by the defendants through their expert witnesses, who are certified public accountants, were sufficient to place a burden on Dixon of showing inventories and values claimed by him. In other words, Dixon cannot rest on criticism alone. He was obligated to counter the accounting of the defendants if it was not correct.

It is clear from what we have said that accountants for the defendants have furnished plaintiff an accounting with the books "adjusted to an accrual basis," as Likes has said would be required. The tabulations and testimony of Talmadge and Stone were subsequent in point of time to Likes' report. In view of this, Dixon clearly cannot continue to stand on the original "cash basis" figures, with no adjustment for "profits in kind."

At 405 P.2d 274, we said:

"If the court finds, after an accounting in accordance with what we have indicated, that profits either in kind or in money were gained during any year of Dixon's management, then and in that event he should be allowed his profit sharing of 20 percent for such year or years."

We fail to see in this case how consideration can be given to profits in kind, during each year that such profits have accrued, unless there is an "adjustment to an accrual basis." We must agree with Likes that such adjustment was essential.

Dixon has failed in his burden of proving that the profit in 1958 exceeded $41,-543.89, if and when the profits for all years of his management reflect "annual" profits in cash or kind—as such profits accrued.

The case should be remanded to the district court with instructions to modify its judgment in favor of Dixon and against the defendants, making the principal amount of such judgment $8,308.78 instead of $60,718.23.