W. R. (Bill) OWENS,

*Plaintiff and Respondent,*

vs.

TONY CAPRI,

*Defendant and Appellant.*

(No. 2406; January 25th, 1949; 202 Pac. (2d) 174)

For Plaintiff and Respondent the cause was summitted on the brief and oral argument of John F. Raper, Jr. of Sheridan, Wyoming.

326

For Defendant and Appellant the cause was submitted on the brief of H. Glenn Kinsley and James Munro both of Sheridan, Wyoming and oral argument by Mr. Munro.

## OPINION

RINER, Chief Justice.

Direct appeal proceedings bring a judgment in favor of the plaintiff entered by the District Court of Sheridan County here for review. The parties will be referred to as aligned in that court, W. R. (Bill) Owens, the respondent here and plaintiff below and Tony Capri, defendant below and appellant here, or by their respective surnames.

The nature of the action may perhaps best be presented by giving a brief summary of the pleadings in the case which so far as the controlling question herein is concerned may be described in substance as follows: Plaintiff's petition states that the plaintiff and defendant entered into a verbal agreement whereby the latter employed the former for the agreed compensation of $500 to assist the defendant in the acquisition of a ranch in Sheridan County Wyoming; that the plaintiff rendered services to the defendant in the defendant's negotiations for the IXL ranch in Sheridan County from one Harrison, the owner thereof;

that this purchase was consummated by the defendant about August 16, 1946 with plaintiff's help and assistance in accord with the agreement mentioned above; that plaintiff in fully performing his part of said contract, made and paid for frequent long distance telephone calls, paid expenses for auto transportation, assisted in negotiations and attended conferences between the parties; and that though demanded from him, the defendant refuses to pay plaintiff the agreed compensation. Judgment for the sum above mentioned is accordingly prayed and also for plaintiff's expenses and costs.

Defendant's answer was in large measure a general denial of the allegations of plaintiff's petition. However, a second defense was interposed in defendant's pleading to the effect that any services rendered by plaintiff in connection with the negotiations which occurred between defendant and Harrison concerning the sale of Harrison's real estate known as the IXL ranch aforesaid to defendant were services rendered relative to the purchase or sale of real estate as defined by Section 97-402, W. R. S. 1931 (Section 37-2102 W. C. S. 1945) and plaintiff acted in said matter as a real estate broker within the meaning and definition of a real estate broker as set forth in Article 4 of Chapter 97 of W. R. S. 1931 (Article 21 of Chapter 37 W. C. S. 1945) ; that the plaintiff:

"was not, at the time of said negotiations, and is not now and never has been, a licensed Real Estate Broker, as required by the Statutes of the State of Wyoming and any services rendered by the Plaintiff as such Real Estate Broker, in connection with said transaction were unlawful and in express violation of the Statutes of the State of Wyoming."

Defendant prayed that plaintiff take nothing by his action and that costs be allowed the defendant.

Plaintiff filed a reply which denied all new material

in this answer but demurred to defendant's second defense hereinabove described. This demurrer, another judge sitting, was overruled and thereafter upon leave being given, plaintiff filed a further reply which denied the allegations of the second defense aforesaid.

The case was tried to the court and judgment for the plaintiff was awarded as already stated and wherein the issues were found generally in his favor. The judgment given was for the amount claimed by plaintiff and costs.

At the outset of our discussion of the legal principles which we deem should control the disposition of this case, without reviewing the evidence, we take it as established by the general finding of the trial court that plaintiff had a contract with defendant as claimed and pleaded by the former and that the services called for on plaintiff's part by that contract were duly performed by him and that defendant refused to pay plaintiff the agreed compensation. The testimony was conflicting on most of these matters but under principles of appellate procedure too well established and too familiar to require citation of authorities, we are obliged to take the trial court's view of them. It is conceded also that plaintiff during all the times covered by the transaction involved herein had no license as a real estate broker as required by Article 21 of Chapter 37 W. C. S. 1945.

Plaintiff's regular vocation was that of a cattle buyer and in the course of that pursuit he had necessarily become familiar with different ranches and farm properties in Sheridan County Wyoming. Defendant being aware of this fact requested plaintiff to aid him in purchasing a ranch in that county. Harrison's IXL ranch was brought to defendant's notice by plaintiff and he (Harrison) and defendant, assisted by plaintiff, in the manner as alleged in plaintiff's initial plead-

ing, began and completed negotiations which resulted in the purchase by Capri of that ranch for $128,000, this price including also one hundred sixty head of cattle located on said ranch. So far as appears by this record, this is the only transaction of this character in which Owens had ever engaged in which he sought compensation for his services. It is true that on cross examination he was asked and his replies were:

"Q. You sold Edna Haywood's ranch?

"A. The way it came up yes. She came to me.

"Q. You sold that, didn't you?

"A. In one way, yes.

"Q. Did you collect commission on that?

"A. No.

"Q. Did you collect compensation for it? Didn't you?

"A. No.

"Q. And did you show Mr. Capri any other ranches besides the IXL ranch?

"A. Yes."

Owens also testified that he did not know what the customary legal commission for real estate brokers was in connection with the sale or purchase of real property. It was, however, proven that such commission was five per cent or in the case at bar, the sale would warrant a commission of $6400.

Harrison, the vendor and owner of the IXL ranch testified that he never employed Owens to sell the ranch but that Owens brought Capri to Harrison's office to talk over terms of sale of the property. Speaking of Owens' efforts in this matter, this witness for plaintiff said:

"Q. Do you recall what authority Mr. Owens had in dealing with you?

"A. I do not know what authority he had except he called on ten or twelve different occasions. After our negotiations had fallen off at times he called and tried to get us back together again, but I do not know whether he had any authority from Mr. Capri or not.

"Q. Did Mr. Owens represent to you that he was a real estate dealer representing Mr. Capri?

"A. He did not."

He also testified that after the sale had been completed he gave Owens $300 because he, Harrison, thought Owens "had it coming to him" for the efforts he had made to close the transaction between the parties. Harrison, however, disclaimed any obligation to Owens to make this payment or that it was paid on account of Capri's agreement to "take care" of Owens. Owens appears never to have regarded Harrison as indebted to him but seems to have looked upon this $300 payment to him as a gift merely.

The principal question which was laid before us for decision after argument heard from both parties was whether what Owens did in the transaction above described, constituted him a real estate broker or salesman within the terms and provisions of Article 21 of Chapter 37 supra. If his acts done, in the situation he then occupied, were to be regarded as bringing him within the purview of that law, then under the authorities presently to be referred to he can not recover in this action even though there was a contract as pleaded by him and he had fully performed it. Another way of putting this query is whether when a person is engaged generally in another business as a vocation, a single act by that person of negotiating a sale or purchase of real property constitutes him a real estate broker or salesman within the meaning of Article 21 of Chapter 37 aforesaid. An affirmative answer under the statute involved will necessarily re-

sult in the consequences indicated in the preceding sentence.

We look, therefore, first at some of the material and pertinent provisions of Article 21 of the chapter mentioned and which our legislature has declared shall be the law of this state.

The first paragraph of that Article, viz., Section 37-2101 reads:

"It shall be unlawful for any person, co-partnership, association or corporation, to act as a real estate broker or real estate salesman, or to advertise or assume to act as such real estate broker or real estate salesman, without a license issued by the real estate board."

Section 37-2102 of the same Article in its first three paragraphs contains the following language:

"A real estate broker within the meaning of this Act (§§ 37-2101—37-2112) is any person, firm, partnership, co-partnership, association or corporation, who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, *or negotiates the purchase or sale* or exchange of real estate, or who leases or offers to lease, or rents or offers for rent, any real estate or the improvements thereon for others, as a whole or partial vocation. The term 'real estate' as used in this act shall include lease-holds and other interests less than leaseholds but shall not include mineral lands.

"A real estate salesman within the meaning of this Act (§§37-2101—37-2112) is any person who for a compensation or valuable consideration is employed either directly or indirectly by a real estate broker, to sell or offer to sell, or to buy or offer to buy, or to) *negotiate the purchase or sale* or exchange of real estate, or to lease, to rent or offer for rent any real estate, or to negotiate leases thereof, or of the improvements thereon, as a whole or partial vocation. *"One act for a compensation or valuable consideration* of buying or selling real estate of or for another, or

offering for another to buy or sell, or exchange real estate, or leasing, or renting, or offering to rent real estate, except as herein specifically excepted, *shall constitute the person,* firm, partnership, co-partnership, association or corporation, *performing, offering, or attempting to perform any of the acts enumerated herein,* a real estate broker or a real estate salesman within the meaning of this Act (§§37-2101—37-2112)." (Italics supplied).

The fourth and last paragraph of the Section sets forth certain exceptions to the application of the Act none of which are involved in the case at bar.

In Section 37-2107 of the same article among elaborate clauses relative to the operation and administration of the law we find this provision:

"No person, co-partnership or corporation engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this state shall bring or maintain any action in the courts of this state for the collection of compensation for any services performed as a real estate broker or salesman without *alleging* and *proving* that such person, co-partnership or corporation was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose." (Italics supplied).

Section 37-2112 of the statute in its first sentence declares that:

"Any person or corporation violating a provision of this Act (§§37-2101—37-2112) shall upon conviction thereof, if a person, be punished by a fine of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00), or by imprisonment for a term not to exceed six (6) months, or by both such fine and imprisonment, in the discretion of the court, and if a corporation, be punished by a fine of not more than one thousand dollars ($1,000.00)."

It must be regarded as very well settled by the courts generally that a person engaged in another business who serves as a real estate broker on a single

occasion but not as a regular occupation is not precluded from recovering compensation by reason of failing to have obtained a broker's license pursuant to a statute requiring those engaged in the real estate brokerage business to obtain a license. See 12 C. J. S. Section 67, page 156 and cases cited in Note 32; 169 A. L. R. 783, Note "b" and extended list of cases there set forth.

But under a statute enacted in exercise of the police power of the state expressly making unlawful a single isolated act of an unlicensed real estate broker in negotiating a sale, selling, or buying real estate, the decisions appear to be practically unanimous in holding that no compensation can be recovered under such circumstances by an unlicensed person.

In George F. Russell Inc. vs. Hickcox, 197 Wis. 622, 222 N. W. 807 where the statute (St. 1927, Section 136.01 (25)) provided that a person who acts "temporarily or otherwise as a real estate broker or real estate salesman in this state without first having obtained a license therefor as required and provided by this section, or who otherwise violates any provisions of this section, shall be guilty of a misdemeanor", it was held that a corporation could not recover a broker's commission where it was formed on the dissolution of a partnership which had theretofore held a broker's license to transact a brokerage business for a certain year and whose assets the corporation had taken over, the corporation having obtained no broker's license covering the year in which the transaction took place. The court remarked:

"The corporation could not deal in real estate without a license. Its contract to sell real estate of defendant was therefore void. Payne v. Volkman, 183 Wis. 412, 198 N. W. 438; Hickey v. Sutton, 191 Wis. 313, 210 N. W. 704."

In Gregory vs. Roedenbeck, 141 Tex. 543, 174 S. W. 2d 585 it appeared that a rice farmer, one Roedenbeck, who, pursuant to a contract with a licensed real estate dealer, gave the latter the name of a prospective purchaser to whom certain lands were, by the dealer, sold for which service the dealer received $3,288 as commission, was promised by Gregory half of this amount for furnishing the name of the person who ultimately bought the property.

After the sale Gregory repudiated the contract and Roedenbeck brought suit for half of the commission as called for by the contract. The trial court declined to allow Roedenbeck to recover. The Texas Court of Civil Appeals reversed the judgment below but the Supreme Court of Texas reversed the action of the intermediate appellate court and reinstated the trial court's judgment.

The Real Estate Dealer's License Act of Texas (Vernon's Ann. Civ. St. Article 6573a, Sections 2 (a) 1, (b), 4, 13) in part provides:

"The term 'Real Estate Dealer' shall include every person or company, other than a salesman, and licensed and registered attorneys, . . . who advertises, or holds itself, himself, or themselves out as engaged in the business of selling, exchanging, buying, renting, or leasing real estate, or assists or directs in the procuring of prospects, or the *negotiation* or *closing of any transaction* which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate, . . . " (Italics supplied).

Section 2, Subsection (b) reads:

"The term 'Real Estate Salesman' shall mean and include any person or company employed or engaged by or in behalf of a licensed real estate dealer to do or deal in any act, acts, or transactions set out and comprehended by the definition of a 'Real Estate Dealer' in Section 2, Subsection (a) of this Act."

Section 4 of the Act provides:

"Any one act set out in Section 2, Subdivision (a) of this Act when performed for another or others for compensation or valuable consideration or who with the intention or in the expectation or upon the promise of receiving or collecting compensation shall constitute a person or company performing, offering or attempting to perform such act or acts, a real estate dealer or a real estate salesman within the meaning of this Act."

Section 13 provides:

"No person or company engaged in the business of acting in the capacity of a real estate dealer or real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in Section 2, Subdivision (a) hereof, without alleging and proving that such person or company was a duly licensed real estate dealer or 'salesman at the time the alleged cause of action arose."

The Supreme Court of Texas concluded its opinion thus:

"We hold that the enactment of the Real Estate Dealers' License Act, regulating those who may make sales of real estate, was a proper exercise of the police power of the State, and that the Act is valid.

"We further hold that the performance for compensation of one act by a person, in connection with the procurement of a prospect for the sale or purchase of real estate, constitutes such person performing the act a real estate dealer within the meaning of the Real Estate Dealers' License Act." (Citing authorities).

Kenney vs. Paterson Milk & Cream Co. Inc. 110 N. J. L. 141, 164 Atl. 274 was a case where the Laws of New Jersey 1921, Chapter 141, page 370 (Comp. St. Supp., Section *26-1 et seq.) required real estate brokers to be licensed. Section 2 of this Act as amended by Laws of 1931, Chapter 159, page 300 (Comp. St. Supp., Section *26-2) defined a real estate broker, and Laws of 1931, Chapter 286, page 720

(Comp. St. Supp., Section *26-1) amended Section 1 of the original Act to read:

"Any single act, transaction or sale shall constitute engaging in business within the meaning of this act."

Plaintiff claimed his business was not buying and selling real estate and that this was the only transaction of the kind he ever participated in or consummated. Plaintiff claimed also that he procured a customer ready, able, and willing to buy the properties of the Paterson Milk & Cream Co. Inc. under a written agreement whereby a commission of 5% or $37,500 was to be paid him. Plaintiff was not a licensed real estate broker.

Holding that the plaintiff could not recover, the New Jersey Court of Errors and Appeals affirmed the Judgment of the trial court on the opinion filed in the circuit court by the trial judge, the concluding paragraphs of which contain the language:

"It is true that prior to the enactment of the 1931 amendment, the Supreme Court of New Jersey held that a single isolated transaction did not come within the purview of the statute. I am of the opinion, however, that as the law now stands, the contract being an entire one, a single sale is unlawful. The sale in this case was unlawful and prohibited by statute.

"In view of the fact that determinations in this case are against the plaintiff, and the rule provides for a decision by the court in accordance with the findings, I am of the opinion that the complaint of the plaintiff should be struck out. It is so ordered."

In Hazlehurst vs. Southern Fruit Distributors, 46 Ga. App. 453, 167 S. E. 898, it developed that plaintiff was not a regular real estate broker and held no license as such. He sued for a commission in buying certain lands for his principal. Holding that he should be non-suited, the Georgia Court said:

"The act as amended, cited above, regulating real es-

tate brokers in certain counties in this state determinable by population, and providing that it shall be unlawful for any person, etc., 'to engage in the business or capacity either directly or indirectly of a real estate broker, . . . without first obtaining a license under the provisions of this act', and that a 'real estate broker means any person, firm or corporation, who, for another and for a fee, commission, or other valuable consideration, sells, exchanges, buys, . . . any estate or interest in real estate, . . . ' has reference to and applies to a person who in a single transaction acts as agent for another in buying for a commission or other valuable consideration, any estate or interest in real estate, and where such broker as agent buys an estate or an interest in real estate for another, without having obtained the license, required by the act, he cannot recover any commission or other thing of value for his services rendered. Padgett v. Silver Lake Park Corp. 168 Ga. 759, 149 S. E. 180."

It will be noted that the statutory language applied in the foregoing case is not as explicit as the Wyoming law, yet nevertheless, it was held to forbid a single transaction on the part of an agent acting for another in buying for a consideration any real estate for that other.

The case of Knight vs. Watson, 221 Ala. 138, 127 So. 840 was decided under a law for the most part practically identical with the vital sections of the Wyoming act above set forth. The facts also in many respects resemble those before us now. Knight sued Watson to recover damages for breach of a contract wherein the defendant employed the plaintiff to sell certain real estate, the defendant agreeing to take a fixed price and plaintiff to have any excess as compensation. Though plaintiff found a purchaser who was able and willing to purchase, the defendant refused to perform. The defense was that plaintiff had no license as a real estate broker or salesman as required by Alabama law. The plaintiff had not prior to nor since this one

transaction, engaged in the real estate business. His regular vocation was that of logging. In the course of the opinion affirming a charge for the defendant, the Alabama Supreme Court said:

"A 'real estate broker' and a 'real estate salesman' are defined by section 2 of the Alabama Real Estate Commission Act. General Acts 1927, p. 335, Michie's Code 10112 (1) et seq. In the first part of section 2 (page 336) a real estate broker is defined as one 'who, for a compensation or valuable consideration, sells or offers for sale . . . any real estate . . . as a whole or partial vocation.' If this stood alone, it would seem to apply to engaging in the business, not to one exclusive transaction, such as this.

"But the same section further declares: 'One act for a compensation or valuable consideration of buying or selling real estate of or for another . . . except as herein specifically excepted . . . shall constitute the person . . . a real estate broker or a real estate salesman within the meaning of this act' ".

After pointing out that the statutory exceptions in the Alabama Real Estate Commission Act (Michie's Code, 10112 (1) et seq.) had no relation to the problem before the court, it was further said:

"A statute imposing a license tax as a revenue measure merely, although declaring the doing of business without such license unlawful and affixing a penalty as a method of enforcement, does not render void and unenforceable contracts made without such license. Sunflower Lumber Co. v. Turner Supply Co., 158 Ala. 191, 48 So. 510, 132 Am. St. Rep. 20; Morgan v. Whatley & Whatley, 205 Ala. 170, 87 So. 846; Smith v. Sharpe, 162 Ala. 433, 50 So. 381, 136 Am. St. Rep. 52. "But an act under the police power, designed to regulate the business, to protect the public against fraud and imposition, requiring a license as evidence of qualification and fitness, and prohibiting any act of business under penalty, unless such license is first obtained, does render such contracts illegal, void, and unenforceable in actions for the recovery of compensation and the like. Bowdoin v. Alabama Chemical Co.,

201 Ala. 582, 79 So. 4; Sunflower Lumber Co. v. Turner Supply Co., supra; Woods v. Armstrong, 54 Ala. 150, 25 Am. Rep. 671.

"The act in question is of the latter class. Its title reads:

" 'To define, regulate, and license real estate brokers and real estate salesman; to create a State Real Estate Commission; and to provide a penalty for a violation of the provisions hereof.

" 'To act as a real estate broker or real estate salesman' without a license is made unlawful. Section 1, p. 335.

"A violation of the act is made a misdemeanor. Section 12.

"A commission is created to administer the act, with power to make regulations. Section 3.

" 'Licenses shall be granted only to persons who are trustworthy and competent to transact the business of a real estate broker or real estate salesman in such manner as to safeguard the interests of the public, and only after satisfactory proof has been presented to the Board.' Section 4.

"The commission may refuse license after a hearing (section 9) ; may revoke a license after a hearing for fraudulent acts specified (section 8).

"The spirit of the entire act is manifest."

Haas vs. Greenwald, 196 Cal. 236, 237 Pac. 38 was another decision upon both such facts and the law coinciding with those we are required to consider in the case at bar. That controversy came before the Supreme Court of California as an appeal by the plaintiff from a judgment entered upon an order sustaining the defendant's demurrer to plaintiff's amended complaint without leave to amend. It was an action for a real estate broker's commission where three parties, two of them regularly licensed real estate brokers (Haas and Stevens) and the third one, John-

son, an attorney at law, were alleged to have held a contract with Greenwald whereby the latter agreed to pay them a commission for negotiating for Greenwald a purchase by him at a fixed sum of certain real property and also a loan of certain moneys from a financial institution to be used in buying the property in question.

The plaintiff's pleading alleged performance on the part of the three parties to this agreement, i. e., Haas, Stevens and Johnson, and Greenwald's failure to carry out his part of the contract. Johnson assigned his interest in the matter to Haas, one of the two others, who, as above stated, held real estate broker's licenses from the State of California. It was alleged that Johnson was never engaged in business as a real estate broker, his regular occupation being that of attorney at law. Holding that the acts of the three parties above named were "expressly within the terms" of the real estate brokers statute of California requiring parties doing such acts as these persons alleged they had done, to hold licenses from the state, the Supreme Court of California used the following language which we shall take the liberty to quote rather largly because of its being so particularly applicable to the matter at bar:

"It is, however, contended by the appellant herein that conceding that A. M. Johnson did act in the part he took in said negotiations in the capacity of a real estate broker, his action in so doing was only in a single though twofold transaction, and not in a course of business as a real estate broker, and hence that the inhibitive provisions of said act do not apply to him. The argument, with the authorities which are cited in support of it, might have some cogency but for the express and unmistakable terms of the statute to the contrary. The language of the concluding clause of section 2 of the act is as follows:

"'One act, for a compensation, of buying or selling real estate of or for another, or offering for another to buy or sell or exchange real estate, or negotiating a loan on

or leasing or renting or placing for rent real estate, or collecting rent therefrom shall constitute the person, copartnership or corporation making such offer, sale or purchase, exchange or lease, or negotiating said loan, or so renting or placing for rent or collecting said rent a real estate broker within the meaning of this act.'

"The particularity with which this clause in said act is phrased leaves no room for any other interpretation than that which its plain terms import, and which are not rendered uncertain by any other phrase or clause which said section of said act or which act as a whole contains. The authorities cited in support of the appellant's position in this regard do not sustain it for the reason, as is well illustrated by the case of Miller v. Stevens, 224 Mich. 626, 195 N. W. 481, mainly relied upon by appellant, that the statute under review in said decision omitted this very provision which our statute contains, rendering a single act of the character defined, for a compensation, sufficient to constitute the person performing it a real estate broker. The appellant discusses this phase of the case chiefly under his next contention, which is that the act, in so far as it seeks to prohibit one individual from employing another to purchase, sell, or negotiate the sale of property, or to secure a loan thereon, or to handle any single transaction in regard to such property, is an unconstitutional exercise of power on the part of the Legislature. In making this contention the appellant concedes that this court in the case of Riley v. Chambers, 181 Cal. 591, 185 P. 855, 8 A. L. R. 418, upheld the general features of the Real Estate Brokers' Act in so far as said act undertakes to regulate the business or vocation of handling real estate transactions, and to that extent determined the constitutionality of the act. An examination of that case, however, shows that this court went much further than the appellant's concession, since in its statement of the contents of said act this court took note of the language therein providing that a single act of selling, etc., shall make a person a real estate broker'.

"It must be concluded therefore that in its discussion of the purposes and policy of said act, and in sustaining

its constitutionality as a whole, this court had in mind this particular feature thereof, and approved it in approving the act as a whole. But, aside from this reasoning as to what has already been decided, we are of the opinion that the act, in designating the several particular acts mentioned in the concluding clause of section 2 of said act as within its inhibitions, violated no constitutional right of the parties to the transactions involved herein or any of them, in so far as the principle of freedom of contract is concerned. It is to be noted that, in the preceding clauses of section 2 of said act, the right of two or more persons to engage in doing any of the acts enumerated in said section as constituting one or more of said persons 'a real estate broker' is perfectly preserved by the provision therein that:

" 'The provisions of this act shall not apply to any person, copartnership or corporation who shall perform any of the acts aforesaid with reference to property owned by such person, copartnership or corporation; nor shall the provisions of this act apply to persons holding a duly executed power of attorney from the owner.'

"It is only when persons, firms, or corporations are acting in a purely representative capacity in undertaking to conduct negotiations of the kind specified in said act, and when such persons or entities have not come into that particular relationship to the owner of the property involved in such negotiations, as finds expression in a power of attorney, that the safeguards of the statute are sought to be thrown around the principals to the transaction in question through the requirement that the agent or agents undertaking to conduct or consummate the same shall have that approved character, which the possession of the required license assures. No particular or convincing reason can be urged why the participants in a single negotiation of the sort defined in said act should not be subjected to the same supervision as those engaging in a series of similar transactions, since at the last analysis every transaction of the kind coming within the purview of the statute is an isolated transaction whether conducted singly or as a series of transac-

tions carried on in the course of a business or vocation, and since the lawmakers have seen fit to embrace the participants in each single transaction within the purview, requirements, and inhibitions of the act in question, we can see no adequate reason for holding that in so doing they have violated the constitutional right of freedom to contract any more than they would have done by confining the scope of the statute to those carrying on such transactions in the course of a business or vocation. The cases upon which the appellant relies are as applicable to the one as to the other situation, and are sufficiently answered, we think, by the comprehensive treatment of the subject in the case of Riley v. Chambers, supra."

The court thereafter held in the case that as Johnson, the attorney at law, was not licensed as a broker and was not performing services in his capacity as attorney at law, the contract was void in its entirety and no recovery could be had thereon.

In connection with the decision last reviewed it should be observed that this ruling of the California State Court of final authority was affirmed in 275 U. S. 490, 48 S. Ct. 33, 72 L. Ed. 389. See also the case of Wise vs. Radis, 74 Cal. App. 765, 242 Pac. 90 and that of Kornman vs. Nelson, 83 Cal. App. 616, 257 Pac. 150 from the same state jurisdiction.

Under a statute also practically identical with the quoted provisions supra of the Wyoming Real Estate Brokers' Act the case of Massie vs. Dudley, 173 Va. 42, 3 S. E. 2d 176 was decided. There the question for decision as stated by the Supreme Court of Appeals of Virginia was:

"whether a person, who is not licensed as a real estate broker under Virginia Code 1936, chapter 175 C, sections 4359 (77)—4359 (91), inclusive, but who is acting under an express contract to produce a purchaser for certain real estate for a fixed fee may recover such compensation for services rendered in con-

nection with negotiations culminating in the sale of that real estate to the purchaser he brings forward."

The plaintiff Massie who sued for compensation for putting through the sale of the real estate involved was at the time not licensed as a real estate broker though he had been such some years before. His regular vocation at the time of the transaction in question and for several years previously was Commissioner of Revenue for a county in the State of Virginia. The trial court disallowed plaintiff's claim for a commission. In affirming this action the reviewing court said in part:

"So much of the Act as it material and pertinent in this case may be set out as follows:

"The first section, 4359 (77), provides:

" 'On and after January first, nineteen hundred and twenty-five, it shall be unlawful for any person, co-partnership association or corporation, to act as a real estate broker or real estate salesman, or to advertise or assume to act as such real estate broker or real estate salesman, without a license.'

"The next section, 4359 (78), defines in clear terms what constitutes a real estate broker within the meaning of the Act:

" 'A real estate broker within the meaning of this act is any person, . . . who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, or rents or offers for rent, any real estate or the improvements thereon for others, as a whole or partial vocation . . . One act for a compensation . . . shall constitute the person, . . . a real estate broker or real estate salesman within the meaning of this act.'

"Section 4359 (81) specifies the requirements for obtaining a license.

"The twelfth section, 4359 (88), provides a penalty by fine and imprisonment, or both, for a violation of any of the provisions of the act.

"While Massie bases his claim upon his contract to furnish Dearing a customer for the land—a customer ready, willing and able to pay the price demanded by the owner—he contends that since he did not fix the price, nor make the sale himself, he was not a broker. By some distinction, which we are unable to follow, he further argues that such services as he rendered are not covered by the word 'negotiate.'

"While it is true he had no authority to fix the price of the property and could not, therefore, make or submit a binding offer, he was nevertheless a broker with a qualified or limited authority. He was authorized to secure a purchaser and to obtain and negotiate offers for the property, subject to the approval of the owner. Once an agreement was reached, his services were at an end. The terms of the sale and the price to be paid were the primary concerns of the parties to the agreement. The price was material only to the measure of compensation.

"Webster's New International Dictionary (2d Ed.), defines the word 'negotiate': 'To hold intercourse or treat with a view to coming to terms upon some matter, as a purchase or sale, a treaty, etc.; to conduct communications or conferences as a basis of agreement; as to *negotiate* for the purchase of a house.'

"Massie initiated, induced, brought about, arranged, and conducted the communications and conferences between the parties for the purpose of arranging a mutual agreement between them respecting the sale of the farm. In pursuance of his contract, he produced a purchaser for the farm, and pointed out its adaptability and advantages for the purposes desired by the prospective purchaser. He kept the parties in contact; he smoothed out the differences between them, and built up their minds towards the sale agreement. He was the linchpin which kept the progress of the negotiations from breaking off. We find it difficult to imagine any set of circumstances more completely constituting the elements of negotiation.

"In Grammer v. Skagit Valley Lumber Company, 1931, 162 Wash. 677, 299 P. 376, 378, 380, it was said:

" ' . . . A broker 'negotiates' just as much when he

brings parties together in such frame of mind that they can by themselves evolve a plan of procedure, as when he himself carries on the discussion and personally induces an agreement to accept a specific provision.'

"Massie's own testimony proves him squarely within the provisions of the Act."

Discussing the policy of the law involved, the Virginia Supreme Court of Appeals remarked:

"Statutes regulating the real estate business, and requiring brokers and salesmen to procure a license before acting as such, have been enacted in many States. They have the same general purpose and are designed to protect the public from the fraud, misrepresentation and imposition of dishonest and incompetent persons. The reasons are not hard to see. The relations of trust and confidence which lie in the very nature of the business require that honesty and a fair amount of intelligence be exercised by those engaged in its pursuit. The records of the courts disclose far too many instances of litigation arising from unrestricted and unregulated agencies in this field. The regulation is an exercise of the police power, and not merely a revenue measure."

Under the facts appearing in the case before us, the clear terms of the law, and the authorities construing such enactments which we have examined hereinabove, we are obliged to conclude that Owens negotiated the sale of the IXL ranch and hence came within the terms of the Wyoming Real Estate Brokers' Act supra. The only case called to our attention which in some degree maintains the position of the plaintiff herein, is Land Co. of Florida vs. Fetty, 15 Fed. 2d (C.C.A.) 942. But that case is readily distinguishable from the one at bar. The Circuit Court of Appeals in the course of its opinion points out that:

"Plaintiff was not authorized to either buy or sell the property in question, and *did not pretend to submit*

*an offer from the seller to the buyer, or conversely."* (Italics supplied).

In the cause we have before us Owens submitted offers from the seller to the buyer and conversely, i.e., he undoubtedly negotiated the sale which was consummated. See Massie vs. Dudley supra.

Although we recognize the apparent hardships sometimes resulting, this court has held that courts will not aid the party to enforce an agreement made in furtherance of acts expressly made illegal by statute. Kennedy vs. Lonabaugh, 19 Wyo. 352, 117 Pac. 1079; Seamonds vs. School Dist. No. 14, 51 Wyo. 477, 68 Pac. 2d 149.

"The law refuses to enforce illegal contracts, as a rule, not out of regard for the party objecting, nor for any wish to protect his interest, but from reasons of public policy." Camp v. Bruce, 96 Va. 521, 524, 31 S. E. 901, 46 L. R. A. 146, 70 Am. St. Rep. 873; 2 Elliott on Contracts, Section 1064.

We do not see how we can, under the law as written by the legislature, do otherwise than reverse the judgment in the case at bar with instructions to dismiss the action. It would seem that all the cases we have examined herein do not appear to have been called to the attention of the District Court. If that had been done, very likely these appeal proceedings would have been unnecessary. The judgment of the District Court of Sheridan County is accordingly reversed with instructions to dismiss plaintiff's action.

*Reversed with Instructions.*

KIMBALL, J. and BLUME, J. concur.