BROWN, *Appellant,*
*v.*
HAVERFIELD, *Respondent.*
(No. 5455, SC P-2479)

557 P2d 233

*W. F. Schroeder* of Schroeder, Denning & Hutchens, Vale, argued the cause for appellant. Also on the briefs was John N. Hutchens.

*Owen M. Panner* of Panner, Johnson, Marceau, Karnopp & Kennedy, Bend, argued the cause and filed a brief for respondent. Also on the brief was C. Montee Kennedy.

Before Denecke, Chief Justice, and O'Connell, Holman, Howell and Bryson, Justices.

O'CONNELL, J.

**O'CONNELL, J.**

This is an appeal by plaintiff from a judgment of the trial court dismissing his action brought to recover compensation for brokerage services performed for defendant. The trial court concluded that plaintiff was barred from recovering because he did not have a broker's license as required by ORS 696.710.[1] Plaintiff contends that under the exemption provisions of ORS 696.030(1) he was not required to obtain a broker's license.[2]

Defendant engaged in extensive livestock and ranching operations in Oregon and Idaho. One of the ranches owned by defendant was the Big Muddy Ranch near Madras, Oregon. Plaintiff had previously been employed in the livestock trucking business and had managed a ranch in Idaho.

The parties met by chance toward the end of November, 1972 and over breakfast, defendant explained that he was in need of help in his various operations. Plaintiff agreed tentatively to locate cattle for defendant's ranches. Later, in December, plaintiff agreed that in addition to locating cattle for defendant he would also assist defendant in his other activities.

By January 1, 1973, plaintiff had begun to locate

[1] ORS 696.710 provides:

"No person engaged in the business of, or acting in the capacity of, real estate broker within this state shall bring or maintain any action in the courts for the collection of compensation without alleging and proving that such person was a duly licensed real estate broker at the time the alleged cause of action arose."

[2] ORS 696.030 provides in part as follows:

"ORS 696.010 to 696.375, 696.395 to 696.435, 696.480, 696.490, 696.710 to 696.730 and 696.990 do not apply to, and the terms 'real estate broker' and 'real estate salesman' do not include:

"(1) Any person, partnership, association or corporation who, as owner, lessor or lessee, performs any acts with reference to property owned or leased by him or it; or any regular employe of any person, partnership, association or corporation who performs any acts with reference to property owned or leased by such person, partnership, association or corporation which are incidental to other principal activities or business of a nonreal estate nature of the employer."

The 1975 legislature amended this exemption in some respects.

cattle pursuant to his agreement with defendant and the parties met to discuss the details for completing the purchase of the cattle. The conversation turned to defendant's previous offer to employ plaintiff in defendant's other activities. Plaintiff testified that defendant offered to hire him to "do things, run errands or do what [he] needed done." Compensation was set at fifty dollars per day and defendant anticipated that he could use plaintiff ten to fifteen days each month. Defendant offered the use of his car for these purposes but plaintiff declined, stating that he preferred to use his own car if defendant would pay him a certain amount per mile for its use. In this conversation, defendant recalled that he had previously paid an employee a bonus for assistance in obtaining a buyer for one of defendant's ranches. He suggested that if plaintiff found a buyer for the Big Muddy Ranch, he would pay him "a darn good bonus." After further discussion, plaintiff agreed to attempt to find a buyer. Defendant offered to pay $100,000 if the selling price for the ranch was $42.50 per acre or more, and $50,000 if the price was $40.00 per acre or less.

On January 12, 1973, the parties met again to discuss the cattle transactions. At this time plaintiff requested that their previous agreement relating to the sale of the Big Muddy Ranch be formalized. Plaintiff, in longhand, wrote the substance of the agreement, describing the compensation as a "finders fee." Both parties signed the contract and had it notarized.[3] Plaintiff testified that he wished to reduce

---

[3]The agreement reads as follows:

"Burton O. Haverfield and Robert J. Brown agree that in the event that the Muddy Ranches known as the Hahn Ranches in Jefferson, Wasco, and Wheeler Countys (sic) of the state of Oregon are sold to Dan Russell, Colman Odum or J. R. Simplot that Robert J. Brown will be paid as follows. If the price is 42.50 per acre or more the finders fee will be 100,000.00 If the price is 40.00 per acre or less the finders fee will be 50,000.00. If the price is in between it will be paid accordingly. The finders fee to be due and paid at closing of the transaction.
/sgd/ Burton O. Haverfield
/sgd/ Robert J. Brown"

the agreement to writing in order to assure its enforceability in the event that one of the parties died.

At the end of January, plaintiff showed the ranch to Harold Doan, an employee of J. R. Simplot and a personal friend of plaintiff. Doan testified that plaintiff approached him saying that he, plaintiff, was working for defendant and that the ranch would be a good purchase for Simplot.

At this point activities subsided and on March 19, 1973 defendant instructed plaintiff to "get after that Doan," and "see if you can't get something going on this thing." Upon plaintiff's urging, Doan spoke with Simplot. Shortly afterwards, Simplot viewed the ranch and began negotiations with defendant for its purchase. Plaintiff testified that on April 30, 1973, defendant informed plaintiff that one-half of the ranch was sold to Simplot and that plaintiff would receive a commission. The sale was made to Inland Terminal Warehouse Company, a corporation controlled by Simplot. In 1974, the remainder of the ranch was acquired by Inland.

Throughout 1973 plaintiff performed diverse services for defendant. In addition to his cattle-buying activities, plaintiff assisted defendant in organizing a work crew; in locating the boundaries of one of defendant's ranches; in interviewing employees; in purchasing equipment for ranching operations; in preparing and presenting to the Bureau of Land Management a grazing plan for government lands controlled by defendant; in recording deeds; in moving supplies and furniture for defendant; in working on a land development plan for property owned by the defendant in Idaho, and in representing defendant on various matters which required plaintiff to travel to California, Oregon and Idaho. All of the foregoing services, other than cattle buying, were performed after plaintiff showed the Big Muddy Ranch property to Doan.

Plaintiff contends that because of his agreement on

January 1, 1973, to assist defendant in various operations and because of the many services rendered for defendant pursuant to the agreement, plaintiff was a "regular employee" and fell within the exception provided in ORS 696.030(1).[4]

The trial judge, in holding that plaintiff was not within this exception, said:

> "* * * I do not believe the plaintiff to be a 'regular' employee within the definitions of the statute. 'Regular' employee means one who would be used in the ordinary course of business of the employer and whose acts with reference to the property are incidental to his ordinary duties. The trip to The Muddy Ranch with Doan was not to buy or sell cattle or to solve a problem in the ranch administration. It was for the specific purpose of showing property pursuant to a specific contract which unfortunately for the plaintiff is unenforceable despite plaintiff's acting in good faith."

The foregoing excerpt from the trial judge's opinion reveals that he misconstrued ORS 696.030(1).

In order to qualify under this statutory exception to the general requirement of licensing, a person must be an owner or lessor of property or a "regular employee" of such a person. If an employee asserts that he comes within the statutory exception, the selling or leasing of land must be incidental to the non-real estate activities of his employer and cannot be the primary business of his employer. Although the statute requires the sale of the land to be incidental to the non-real estate activities of the employer, the statute does not say, as the trial court interpreted it, that the employee's activity in selling the property be incidental to his other non-real estate duties. In fact, an employee could qualify even if he had no duties at all in connection with employer's principal business.[5]

---

[4] ORS 696.030(1) is set out in footnote 2 *supra*.

[5] The legislative history of ORS 696.030(1) supports this interpretation of the statute. In testifying at the legislative hearing on ORS 696.030(1), Real Estate Commissioner Jensen stated: "[T]he Commission does not wish

■ The evidence would support the conclusion that the sale of the Big Muddy Ranch was only an incident to defendant's primary business of ranching. The sole inquiry, then, is whether plaintiff was a "regular employee" of defendant at the time he solicited the sale of the ranch.

■ We construe "regular employee" as used in ORS 696.030(1) to mean an employee (as distinct from an independent contractor) whose services for his employer are of a recurring nature (although not necessarily full time) which the employee is expected to perform from time to time pursuant to his original engagement. Whether a person is a regular employee or merely a casual employee hired to perform a single piece of work is obviously a question of degree. In the present case it seems clear that plaintiff was employed to perform recurring services of various kinds over a substantial period of time as directed by defendant. Although plaintiff's employment to procure a purchaser for the ranch differed in some respects from the other tasks which he undertook to perform for defendant, the sale of the ranch was an incidental part of defendant's business. The brokerage activity can, therefore, also be considered as an incidental part of the plaintiff's other duties (although as we have observed above, this is not a requirement under the statute).

It is arguable, of course, that plaintiff's employment to find a purchaser for the ranch was a separate engagement which created a relationship of employer-

---

to take in people who are selling their own property or take in any type of corporation such as railroads, oil companies, Safeway Stores, etc., who have their own real estate department."

Similarly, Mr. John Black, President of the Salem Board of Realtors, testified that "The problem is that the law permits an owner or his 'regular employees' to sell his property. The big concern is that in large subdivision developments the owner of such property has his 'regular employees' go out and sell real estate for him at a certain wage, hourly or whatever, and these 'regular employees' are not qualified or licensed to do so." (Minutes, Senate Commerce & Utilities Committee, May 17, 1963.)

independent contractor. We do not think that the evidence shows an intention to create such a relationship. Defendant contends that because the employment to find a purchaser for the ranch was put in writing and provided for separate compensation, plaintiff should be deemed an independent contractor. We do not regard this as determinative. Defendant's agreement to employ plaintiff to find a purchaser for the ranch called for the payment of a large sum of money. With such a large sum at stake, it is understandable that plaintiff would want to have written evidence of the agreement in the event of a dispute over the terms of his employment. This was plaintiff's explanation for reducing the agreement to writing.[6] It is significant to note that although the written agreement refers to the compensation as "finders fee," defendant described it as a "bonus" when the parties discussed the agreement before the writing was prepared.

Considering the evidence as a whole, we think that the parties regarded plaintiff's employment to find a purchaser for the ranch as just one more activity along with plaintiff's other activities as an employee. We hold, therefore, that the judgment must be reversed.

It is not clear from the record whether there were issues left unresolved when the trial court disposed of the case on the ground that the contract was unenforceable by force of the statute. After the verdict of the trial court in this case, plaintiff requested a finding that, "But for the Court's conclusion that the contract sued upon is unenforceable, the verdict would be for plaintiff upon his complaint." This request was denied. There appears to have been some dispute as to whether J. R. Simplot, the purchaser solicited by the plaintiff, was the alter-ego of the eventual corporate purchaser. This issue was not raised on appeal. Since we are unable to determine whether this or some other

---

[6]There is the additional explanation that the agreement would be unenforceable if not in writing. ORS 41.580(7).

issue remains unresolved, it is necessary to remand the cause for proceedings which are consistent with this opinion.

Reversed and remanded.