656 P.2d 1154 (1983)
BATTLEFIELD, INC., a Wyoming corporation, Appellant (Defendant),
v.
Ellen L. NEELY, Appellee (Plaintiff).
No. 5718.
Supreme Court of Wyoming.
January 7, 1983.
*1155 Don W. Riske, of Riske & Edmonds, P.C., Cheyenne, for appellant.
Gerald R. Mason and William H. Twichell, of Mason & Twichell, P.C., Pinedale, for appellee.
Before ROONEY, C.J.[*], RAPER, THOMAS and ROSE[**], JJ., and GUTHRIE, J., retired.
ROSE, Justice.
On July 30, 1980 appellee Ellen L. Neely filed a complaint against appellant Battlefield, Inc., a Wyoming corporation, alleging breach of an oral employment agreement and claiming unpaid real estate commission damages in the sum of $22,600.86. Battlefield denied the material allegations of the complaint and proffered affirmative defenses, including the allegation that the appellee's conduct violated the Wyoming Real Estate License Act, and the interpretative rules promulgated by the Wyoming Real Estate Commission, and that she was not exempt from its licensing provisions by § 33-28-101, et seq., W.S. 1977.[1] It was urged that appellee's action was therefore barred by Wyoming law.
When the issues were joined, the appellant Battlefield, Inc. filed a motion for summary judgment which was denied. The case then went to trial and the jury returned a verdict for the plaintiff-appellee for $18,588.34. A judgment was entered on the verdict and Battlefield appeals. We will affirm.

FACTS
In the early part of July, 1979 Mr. Jack Richardson, president of Battlefield, Inc., approached Ms. Neely and offered to employ her to market real estate which appellant Battlefield owned. The appellee accepted the offer in August of 1979. At that time, Ms. Neely had been making preparation to obtain a real estate license but Jack Richardson, who had undisputed authority to speak for the appellant corporation in all matters with which we are in this appeal concerned, advised her to terminate these efforts explaining that her work for the corporation would be such that she would not need a license. Richardson represented to Ms. Neely that the real estate law exempted "regular employees" of owners of real estate, and that this would be the relationship that she and Battlefield would enjoy during their association. To be certain that Ms. Neely would be comfortable with the exemption and would be positive that it applied to her, Richardson examined with Ms. Neely the section of the Wyoming statute which spoke to this issue, namely, § 33-28-103, W.S. 1977, supra n. 1. Therefore, Mr. Richardson, when he employed Ms. Neely, not only knew that she was not licensed, but he had also represented to her that she was exempt from the licensing *1156 requirement of the Wyoming statutes. Whether Ms. Neely was possessed of a license or not was in no way a factor in either her employment or the subsequent termination of her services.
The terms of the employment proposal were that Ms. Neely was to show properties to prospective purchasers and would be paid 25% of the gross amount of any sales which she brought to fruition. On occasion she was directed to show the property to purchasers referred to her by Mr. Richardson. She was to use only the forms provided by appellant and was told how those forms must be filled out. The corporation provided Ms. Neely with the maps, price lists, disclosures and all other documents that were necessary for selling the property. While she could solicit potential purchasers on her own, and from time to time was directed to show the property to purchasers referred to her by Mr. Richardson, she did not have the authority to bind appellant to contracts without Richardson's approval. The record discloses that the corporation retained the exclusive authority to either accept or reject any sale prospect which Ms. Neely presented. Appellant also reserved the right to fire appellee at any time for any reason.
Richardson exercised control over appellee's advertising  he introduced Ms. Neely to potential purchasers, he accompanied her on various occasions where he instructed her and controlled her selling procedures so that appellee was obliged to sell in absolute conformance with Mr. Richardson's instructions and could not make any sales except in the authorized manner.
Mr. Richardson was highly sophisticated in the handling of real estate transactions and was knowledgeable in the law with respect to such matters, while appellee was not possessed of this kind of knowledge or experience. It is noteworthy that appellant had hired and paid compensation for doing the same or similar work to at least one other person who was not licensed. Richardson admits Ms. Neely would have been paid if she had not broken her agreement, regardless of whether or not she had a real estate license. Of course, whether the appellee did or did not breach her contract is not in any way at issue in this appeal. Ms. Neely sold for the appellant only and it is conceded that Battlefield was the recipient of substantial benefits from her efforts and services.
Ms. Neely commenced working under those conditions and, after accompanying Mr. Richardson to the property and being introduced to several prospective purchasers, she was directed to write up certain contracts that were then entered into by the parties. When this was accomplished, Richardson ordered the bank to deduct 25% of the payments received on those contracts and to deposit these monies to the credit of appellee, which the bank did.
Ms. Neely continued working under this arrangement until approximately November 15, 1979, when, because of some personal differences that she had with Mr. Richardson, her employment was terminated and, on or about March 28, 1980, the bank was instructed to discontinue paying Ms. Neely her portion of payments received on such contracts as she had previously caused to be executed and upon which payments were being made.
The record tells us that, at the time of her termination, appellee had sold $90,250 worth of property, having a deferred-payment price of $119,598.75. At that time she had done all things necessary to complete the sales and there remained nothing further for her to do but collect the monies earned. The evidence is that appellee had earned but was unpaid compensation in the amount of $26,042.44, in spite of which fact the jury returned a verdict of only $18,588.34. Ms. Neely has not, however, cross appealed.
Such other facts as we consider relevant will be referred to later in this opinion.
Before addressing the issues, we should perhaps observe that we perceive the appellant to be urging some rather shocking positions in this appeal. Particularly, we see the appellant coming to this court asking it to reach some blatantly inequitable decisions in order to help the corporation avoid *1157 its honest obligations. Courts do not like to aid litigants in avoiding their contractual obligations by joining in their games of hide-and-seek behind statutory technicalities  especially is this so where the other party has performed and the party looking to avoid the contract has reaped all the benefits of the performance. We will not aid and abet such efforts if we can possibly avoid it.

ISSUES
The appellant defines the two issues for our consideration as follows:
(1) "WHETHER THE APPELLEE, AS A MATTER OF LAW, WAS A `REGULAR EMPLOYEE' OF THE APPELLANT AS CONTEMPLATED BY THE EXEMPTION FROM THE REQUIREMENTS OF THE WYOMING REAL ESTATE LICENSE ACT AS SET OUT IN W.S. XX-XX-XXX."
(2) "WHETHER THE APPELLANT, WHOSE SOLE ACTIVITY WAS THE SALE OF ITS OWN REAL PROPERTY, IS THE TYPE OF `OWNER OF REAL ESTATE' CONTEMPLATED BY THE WYOMING LEGISLATURE IN ITS ADOPTION OF W.S. XX-XX-XXX."
Another way of describing the issues identified by this appeal is to say that we are concerned with whether or not Ms. Neely is exempt from the Wyoming real estate licensing provision of the statute and whether the appellant is the type of owner contemplated by the exemption provision.

ARGUMENT I

Was Ms. Neely Exempt From the Licensing Act?

A. Was the appellee a subdivider and thus NOT exempt from licensing under § 33-28-103, W.S. 1977?

One of the tenuous grounds urged by appellant is that it should not have to pay Ellen Neely her commissions (even though she earned them) for the reason that she is not exempt from the mandatory licensing provisions of the Act since she was a subdivider  and § 33-28-103, supra, denies licensing exemption from those persons who
"as subdividers, sell or offer for sale subdivisions."
We hold that Ms. Neely was not a subdivider under the statute and therefore is not, by the subdivider language, denied her real estate license exemption.
Appellant's contention in this respect vividly points to its paper-thin underpinning in this appeal because, if Ms. Neely is precluded from licensing exemption because she is a "subdivider," then Battlefield is also a "subdivider" without a real estate license. If Battlefield's position were to be upheld, the result would be for us to take the money that Ms. Neely has earned and give it to Battlefield although, under Battlefield's theory, both are guilty of the same infraction of the law. The appellant asks a lot of the justice system when it proposes that we accept this sort of an offer, and we respectfully decline to do it for the reason that neither Ms. Neely nor Battlefield is denied the privileges of the licensing exemption statute by reason of the subdivider exception contained therein.
The class excluded from licensing exemption under § 33-28-103, W.S. 1977 is "subdividers" who sell or offer for sale "subdivisions." Fortunately, the term "subdivision" is defined in § 33-28-102(a)(vi), W.S. 1977 as follows:
"The term `subdivision' means any land or tract of land in another state which is divided or proposed to be divided into five (5) or more lots, parcels, units or interest, for the purpose of disposition as a part of a common promotional plan and where any subdivision is offered by a single developer, or a group of developers acting in concert, and such land is contiguous or is known, designated or advertised as a common unit or by a common name such land shall be presumed, without regard to the number of lots covered by each individual offering, to be a part of a common promotional plan;" (Emphasis added.)
The appellee satisfactorily disposes of the contention that appellant and appellee were "subdividers" and thus not exempt from *1158 licensing under § 33-28-103, W.S. 1977, when she says in her brief:
"The land which appellee offered for sale on behalf of appellant was not located in another state, hence appellant is not a subdivider nor was the land involved a subdivision for the purposes of the Wyoming Real Estate Licensing Act. The exemption from the licensing requirements is, therefore, available to both appellant and appellee.
"Furthermore, the exclusion of Wyoming land from definition of a subdivision for licensing requirements becomes very strong evidence that the legislature must have intended that owners of Wyoming subdivisions could enjoy the same benefits in regard to the sale of their land that the owners of unsubdivided Wyoming land enjoyed * * *."
For the reasons given, the appellee was not offering "subdivisions" for sale and therefore was not affected by this exception to the licensing exemption provision.

B. Was the appellee a "regular employee" as contemplated by the licensing exemption statute § 33-28-103, W.S. 1977?

The trial court did not err in submitting to the jury the question which asks whether Ellen Neely was a "regular employee" within the contemplation of the exemption statute.
It seems appropriate here to call attention to the fact that no member of the public has been adversely affected by anything that Ms. Neely did. The only one complaining is the corporation who hired her knowing she was not a licensed real estate agent, and now, after she has performed for her employer, it seeks to play little statutory interpretation games in an effort to avoid paying her the commissions it promised and the commissions she has earned. We are supportive of the trial judge's comments when, denying defendant's motion for a directed verdict, he said:
"* * * The evidence further indicates that there were sales and there was benefit that accrued to Battlefield, Inc. and to the Defendants in this action. The Court does not believe that it is or ought to be the policy of Wyoming law that under those types of facts and circumstances, an owner of land, of Wyoming land, which is to be subdivided, can take advantage of a person not holding a real estate sales license, obtain the benefits when he doesn't care whether they are licensed or not, obtain the benefits of such a transaction and then utilize and manipulate the Wyoming law to his own advantage to avoid that for which he bargained.
"We will give it to the Jury."
Since a third party has not been damaged by the actions of Ms. Neely, and since the statute is designed to protect the public  not someone standing in the shoes of Battlefield, Inc.[2]  and since the party who seeks the aid of the law has conducted itself with such good purpose as can only be described as questionable at best  we will eye the Wyoming real estate licensing exemption statute with a view that looks to see and do that which is equitable  instead of that which is inequitable.

1. Agency Interpretation
It is the contention of the appellant that, given the condition of the record, it must be concluded  as a matter of law  the appellee was not a "regular employee" as conceived by § 33-28-103, W.S. 1977, and that reasonable minds could not differ on the issue. Thus, goes the argument, the court erred in presenting the question as one of fact for the jury. One of the assertions made in support of this position is that the Wyoming Real Estate Commission, in § 2, subparagraph (d) of its rules and regulations, has interpreted the term as follows:

*1159 "The term `regular employee,' for the purposes of this act, means one who is employed on a regular, salaried basis by the owner of real estate whose duties are performed in the ordinary course of the business or management and/or operation thereof and the investment therein, and whose acts with reference to the sale of the employer's property are incidental to his ordinary duties."
Appellant alleges that § 2, subparagraph (d) is a substantive rule of the Wyoming Real Estate Commission that must be given the force and effect of law by this court. In other words, Battlefield contends that the definition of "regular employee" as set out in the regulation, which obviously excludes appellee Neely, is a binding legislative rule by which we must abide. Appellee Neely asserts, in the alternative, that the definition of "regular employee" in the regulation is merely the agency's interpretation of what the term is intended to mean, and such interpretative rules are not binding on this court. Of course, if we were bound by the commission's interpretation of the words "regular employee" the appellant's position would have merit  but we are not.
Whether the appellee qualifies as a "regular employee" under the commission's interpretation of the statute is not the initial question that must be answered. Attention must first be given to this query:
Assuming this court were to disagree with the commission's interpretation of the term "regular employee," is that interpretation nevertheless binding upon us?
In order to answer this, we turn to some general administrative law concepts having to do with administrative agencies' legislative and interpretative rule-making powers.
It is said in 1 Am.Jur.2d Administrative Law § 95, "Legislative and Interpretative," pp. 892-893:
"From the standpoint of breadth of discretion in rulemaking which is recognized by the courts, that is, the extent to which the courts will restrict themselves in overturning administrative rules or regulations, and the legal effect given to such rules or regulations, rules or regulations are often classified as `legislative' and `interpretative.'
"`Legislative' rules or regulations are accorded by the courts or by express provision of statute the force and effect of law immediately upon going into effect. In such instances the administrative agency is acting in a legislative capacity, supplementing the statute, filling in the details, or `making the law,' and usually acting pursuant to a specific delegation of legislative power. `Interpretative' regulations are those which purport to do no more than interpret the statute being administered, to say what it means. They constitute the administrator's construction of a statute. In such instances the administrative agency is merely anticipating what ultimately must be done by the courts; they are performing a judicial function rather than a legislative function, and interpretative regulations (in the absence of ratification by the legislature) have validity in judicial proceedings only to the extent that they correctly construe the statute and then, strictly speaking, it is the statute and not the regulation to which the individual must conform." (Emphasis added and footnotes omitted.)
In Schwartz, Administrative Law, § 58, p. 154, the author says:
"* * * A substantive rule is the administrative equivalent of a statute, compelling compliance with its terms on the part of those within the agency ambit. Substantive rules are issued pursuant to statutory authority and implement the statute; they create law just as the statute itself does, by changing existing rights and obligations. An interpretative rule is a clarification or explanation of existing laws or regulations, rather than a substantive modification of them. Interpretative rules are statements as to what the agency thinks a statute or regulation means; they are statements issued to advise the public of the agency's construction of the law it administers." (Emphasis added and footnotes omitted.)
*1160 See also, 2 Davis, Administrative Law Treatise, § 7:8, pp. 36-37, 42, and § 7:11, pp. 54-57.
The Real Estate Commission's rule was an interpretative rule. We conclude this, because, even though the commission is granted the authority by § 33-28-105(a) and (c)(vii) to adopt rules and regulations to assist in implementing the laws, § 33-28-103 does not delegate, in any manner, the power of the commission to determine the meaning of the term "regular employee" as used therein. Finding no specific delegation of authority, we conclude that the commission's rule must be characterized as an interpretative rule, which under the above authorities is not necessarily binding on this court. Even so, we must still decide whether it was proper  under the law  for the court to give the jury the question as a fact issue that asks whether Ms. Neely was a "regular employee" of Battlefield.

2. Legal Interpretation
Appellant admits that the issue of whether one is an employee or an independent contractor is a question of fact, unless the record contains insufficient facts to support an employer-employee relationship conclusion or unless the only inference that can be drawn from the facts is that the individual was not, under the applicable law, an employee. The appellant says in its brief:
"When confronted with a vicarious liability question in an auto accident involving an insurance salesman, this Court in Combined Insurance Co. of America v. Sinclair, [Wyo., 584 P.2d 1034 (1978)], noted initially that the overriding consideration in making a determination whether one is an `employee' or an `independent contractor' lies in whether or not the employer has retained the right to control the details of the work. This Court noted that this issue is ordinarily one of a question of fact for the jury but that it becomes a question of law when only one reasonable inference can be drawn from the facts, citing Barnes v. Fernandez, 526 P.2d 983 (Wyo. 1974), Tyler v. Jensen, [75 Wyo. 249] 295 P.2d 742 (1956), and Holly Sugar Corp. v. Perez, 508 P.2d 595 (Wyo. 1973)." (Emphasis added.)
The appellant would have us hold that, under the facts of this case, there are either insufficient facts for us to determine that Ms. Neely is an employee under the statute (§ 33-28-101, supra) or that, given the facts bearing upon the employee question, the only reasonable inference that can be drawn is that she was not.
The appellant correctly identifies the test that must be satisfied in order to establish the employer-employee relationship, which is whether or not the employer retained the right to control the details of the work  and, to be sure, this is ordinarily a jury question.
We said in Combined Insurance Company of America v. Sinclair, Wyo., 584 P.2d 1034, 1042 (1978):
"* * * The overriding consideration in determining whether one is an employee or an independent contractor lies in ascertaining whether or not the employer has the right to control the details of the work whereby liability is sought to be established. Stockwell v. Morris, 46 Wyo. 1, 22 P.2d 189. This issue is ordinarily a question of fact for the jury and becomes a question of law only when but one reasonable inference can be drawn. Barnes v. Fernandez, [Wyo., 526 P.2d 983]; and Tyler v. Jensen, 75 Wyo. 249, 295 P.2d 742, 749. More particularly, the extent to which an employee has the `right to control' is primarily a jury question. Holly Sugar Corporation v. Perez, Wyo., 508 P.2d 595, 598."
We went on to say that when we are undertaking to decide whether a jury's finding of employer-employee relationship may be successfully attacked,
"* * * we must look to the evidence most advantageous to the appellee and give it every favorable inference.",
citing Rissler and McMurry Co. v. Atlantic Richfield Co., Wyo., 559 P.2d 25 (1977) and Kahler v. Martin, Wyo., 570 P.2d 720 (1977).
In Combined Insurance, supra, we emphasized that the important fact to be remembered *1161 in making a determination with respect to whether one is an employee or an independent contractor is to look to whether the "right to control" was retained by the alleged employer and not whether the employer in fact exercised the right. We said:
"* * * The base determining factor is whether Combined retained the right of control [emphasis in text] * * * and not whether such control was in fact exercised [emphasis added]. Stockwell v. Morris, [46 Wyo. 1, 22 P.2d 189] supra; Brubaker v. Glenrock Lodge Intern. Order of Odd Fellows, Wyo., 526 P.2d 52 (1974); Tyler v. Jensen (1956), [75 Wyo. 249, 295 P.2d 742] supra; Fox Park Timber Co. v. Baker, 53 Wyo. 467, 84 P.2d 736, 120 A.L.R. 1020 (1938); Chatelain v. Thackery, 98 Utah 525, 100 P.2d 191, and Ludlow v. Industrial Commission, 65 Utah 168, 235 P. 884. See, also, 41 Am.Jur.2d, Independent Contractors, §§ 5 and 7." 584 P.2d at 1042.
We pointed out in Combined Insurance that another indicia of the retention of the right to control and the exercise of control is whether the purported employer had the authority to fire the alleged employee without incurring liability. Combined Insurance, 584 P.2d at 1043, quoting from Lichty v. Model Homes, 66 Wyo. 347, 211 P.2d 958, 967 (1949). On the other hand, we said in Combined Insurance that an independent contractor
"`"* * * is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work." ...' Lichty v. Model Homes, 66 Wyo. 347, 211 P.2d 958, 967."
In this case, not only did the appellant through Richardson retain right of control over the details of Ms. Neely's work, but he actually exercised meticulous control over the particulars relating to her sales activities and thus Ms. Neely was never left to her own devices with respect to the details of the work which she was employed to do. Evidence of this can be seen in that:
(1) Ms. Neely was in fact employed;
(2) She accepted the employment;
(3) She was to show the appellant's property for sale; but
(4) She could not close a sale without Richardson's approval;
(5) Richardson could reject all offers brought by Ms. Neely to the company;
(6) Ms. Neely was to use the forms provided by appellant and was told how the forms must be filled out;
(7) The appellant provided Ms. Neely with maps, price lists, and all documents which were to be utilized in selling the property;
(8) Richardson exercised control over the details of appellee's advertising;
(9) Richardson, in order to show Ms. Neely how to conduct her sales presentations, accompanied her on various occasions where he instructed her and controlled her manner of sale;
(10) The appellant reserved the right to fire and did fire the appellee.
From a review of these facts, there can be no doubt whatever that Battlefield not only retained the right to control the day-to-day detailed activity of Ms. Neely's employment obligations but, in fact, did control the details of Ms. Neely's work. Therefore the issue of whether or not Ms. Neely was an employee of Battlefield is at least a jury question  if indeed it was not so clear and unequivocal that it became a question of law which could have only been resolved in favor of the appellee's contention that she was a "regular employee" of Battlefield.

ARGUMENT II
The appellant asks:
"WHETHER THE APPELLANT WHOSE SOLE ACTIVITY WAS THE SALE OF ITS OWN REAL PROPERTY IS THE TYPE OF `OWNER OF REAL ESTATE' CONTEMPLATED BY THE WYOMING LEGISLATURE IN ITS ADOPTION OF W.S. XX-XX-XXX."
In its brief, the appellant spells out its contention as follows:

*1162 "It is undisputed that the sole activity of Appellant Battlefield, Inc., was the sale of real property owned by it as subdivided parcels of that area within Lincoln County, Wyoming, known as Commissary Ranch. * * * It is the Appellant's contention that an owner of real property who is wholly engaged in the business of selling its own real estate is not within the contemplation of the exemption statute to the Real Estate License Act and therefore it cannot have any `regular employees' who could qualify to sell such real estate without having an active Wyoming real estate license."
The only authority cited for this position is MacPhee v. Kinder, Tex.Civ.App., 523 S.W.2d 509 (1975), Elrod v. Becker, Tex.Civ. App., 537 S.W.2d 84 (1976) and Brown v. Haverfield, 276 Or. 911, 557 P.2d 233 (1976). These cases are distinguishable because they do not interpret a statute which is the same or in material respects nearly the same as our § 33-28-101, W.S. 1977, supra. The Texas statute specifically excluded from its exemption statute "`owners * * * engaged wholly or in part in the business of selling real estate.'" MacPhee v. Kinder, 523 S.W.2d at 512, quoting Vernons Ann.Civ.St. art. 6573a, § 6(4). Our statute carries with it no such exception. In Brown v. Haverfield, supra, the Oregon statute with which the court was there concerned limits the availability of the exemption to regular employees of owners who perform acts in relation to a sale
"`* * * incidental to other principal activities or business of a nonreal estate nature of the employer.'" 557 P.2d at 234, n. 2, quoting ORS 696.030(1).
With this language in the statute, the court concluded that the Oregon licensing exemption statute would not apply if the employer's primary business were the sale of land. But Wyoming's statute contains no such language.
The only exception to be found in the exemption provision of the Wyoming real estate licensing law is the one we have previously discussed, i.e., the provision with respect to subdividers. There is no reason for us to interpret § 33-28-101 to say that Battlefield, Inc. is not the kind of owner contemplated by the statute and appellants have not pointed us to any cogent authority to indicate that we should so hold.
We find that Battlefield, Inc. was the type of landowner envisioned by § 33-28-101 with the attendant capability of entering into an employer-employee relationship with Ms. Neely  which it did.
Affirmed.
RAPER, Justice, concurring.
I concur in the majority opinion even though there is an unsatisfactory result which points up a weakness in the real estate licensing act. The legislature, through oversight or otherwise, has authorized the outcome we reach. If intentional, it is not for this court to question legislative wisdom when the statutory language is clear. Courts will not usurp the power of the legislature by deciding what should have been said. Barber v. State Highway Commission, 80 Wyo. 340, 342 P.2d 723 (1959).
GUTHRIE, Justice, retired, concurring.
I concur in the majority opinion but feel that the following comment should be made. An examination of the case of Dixon v. Ringsby, Wyo., 405 P.2d 271 (1965) and Owens v. Capri, 65 Wyo. 325, 202 P.2d 174 (1949), reveals that Dixon v. Ringsby was decided under a dissimilar statute and prior to the adoption of § 33-28-103, W.S. 1977, in 1971. The Owens v. Capri case did not involve the then exemption statute and in my view has no applicability herein. The statute under which the Dixon case was decided was quite different and much more restrictive than the present statutory exemption. In my view, it must be presumed that the legislature intended to adopt a less restrictive definition of the words "regular employee" by repeal of the earlier statute and adoption of the present one. Jordan v. Delta Drilling Company, Wyo., 541 P.2d 39, 43 (1975).
*1163 ROONEY, Chief Justice, dissenting.
I agree with the majority opinion in its conclusion that appellant did not act within the spirit or letter of the law in connection with this incident. I do not agree that appellee was within the exemptions of § 33-28-103, W.S. 1977 (see fn. 1, majority opinion). She should have been licensed under the Real Estate License Act of 1971 (§§ 33-28-101 through XX-XX-XXX, W.S. 1977) before carrying on her activities in connection with this incident. Both parties were, or should have been, aware of this requirement. Inasmuch as each of them came into court with dirty hands, I would leave them as the court first found them.
"The frequently stated maxim that `he who comes into equity must come with clean hands' is an ancient and favorite precept of the equity court." 27 Am.Jur.2d Equity, § 136.
In Owens v. Capri, 65 Wyo. 325, 202 P.2d 174 (1949), a person who submitted purchaser's offers to vendor of a ranch in a single real estate transaction was held to be acting as a broker without a license, wherefore he could not enforce an oral agreement with the purchaser for a fee to be paid in assisting the purchaser in acquisition of a ranch. We there said at page 183 of 202 P.2d:
"Although we recognize the apparent hardships sometimes resulting, this court has held that courts will not aid the party to enforce an agreement made in furtherance of acts expressly made illegal by statute. Kennedy v. Lonabaugh, 19 Wyo. 352, 117 P. 1079, Ann.Cas. 1913E, 133; Seamonds v. School Dist. No. 14, 51 Wyo. 477, 68 P.2d 149.
"`The law refuses to enforce illegal contracts as a rule, not out of regard for the party objecting, nor from any wish to protect his interest, but from reasons of public policy.' Camp v. Bruce, 96 Va. 521, 524, 31 S.E. 901, 43 L.R.A. 146, 70 Am.St.Rep. 873; 2 Elliott on Contracts, Section 1064."
The sales were not within the exceptions contained in § 33-28-103, W.S. 1977. The legislative intent in this respect was there adequately expressed when considered together with other provisions of the act of which it is a part. Licensing is required for those who participate in the activity:
"* * * for another and for a fee, commission or other valuable consideration, or with the intent or expectation of receiving same, negotiates or attempts to negotiate the listing, sale, purchase, rental, auctioneering, exchange or lease of any real estate or the improvements thereon, or collects rents or attempts to collect rents, or who advertises or holds himself out as engaged in any of the foregoing activities. * * *" Section 33-28-102(a)(ii), W.S. 1977.
Appellee, with assistance from and knowledge of appellant, was certainly doing that. And the exceptions contained in § 33-28-103, W.S. 1977 (see fn. 1 in majority opinion) do not apply to this situation. The exceptions are designed to exclude from the licensing requirement those who have occasion to sell real property for others but who are not doing so as a part of their regular business, i.e. attorneys-in-fact operating under a power of attorney, attorneys at law, public officials performing official duties, receivers, trustees, administrators, executors, guardians, those acting under a court order or authority of a will or trust instrument; and "an owner of real estate or to a member of his or her immediate family or to his regular employees with respect to property owned by him." The only exception having possible application to this incident is the last quoted one.
And it is inapplicable inasmuch as appellee was not a regular employee of appellant. Her status may have been that of an "employee" as distinguished from an "independent contractor," but she was not a "regular" employee within the intent of the statute. The use of the word "regular" by the legislature cannot be said to be a useless gesture.
"* * * We must give meaning to every word, clause and sentence of the statute and the statute should be construed so that no part will be inoperative or superfluous. * * *" State Board of Equalization v. Cheyenne Newspapers, Inc., *1164 Wyo., 611 P.2d 805, 809 (1980). See: Belco Petroleum Corporation v. State Board of Equalization, Wyo., 587 P.2d 204 (1978).
During the period which is subject of this action, appellee was the elected Clerk of the District Court of Sublette County. Her employment by the county was on a full-time basis.
"Each * * * clerk of the district court, * * * shall devote full time to the duties of their respective offices during the term for which they were elected or appointed." Section 18-3-106, W.S. 1977.
Appellee may have been a part-time or irregular employee of appellant, but she was not a regular employee of it within the intent of the statute.
Additionally, the exception in the statute was intended to allow one other than a licensed real estate broker or salesman to sell his own property and to utilize the members of his immediate family or those regularly working for him in such role. To go beyond the scope of this intention and to allow a licensed real estate broker to use unlicensed people to sell real property for him simply because he has taken title thereto in his own name would be contrary to the entire purpose of the Real Estate License Act of 1971. And many brokers do buy real property or take it in trade in the course of their real estate business, which property they subsequently sell. Under the holding of the majority opinion, unlicensed individuals could be employed to do so. The very intent and purpose of the act will be thwarted by judicially legislating such a loophole.
A temptation exists to weigh the relative dereliction of the parties and to make an award to the one whose hands are least dirty, but such is not a function of the court.
I would remand the case with instructions to vacate the judgment and to dismiss the case.
THOMAS, Justice, dissenting.
I agree with the conclusion of Justice Rooney that this case should be reversed. Because I have identified a different rationale for that reversal I cannot simply join in his dissenting opinion. In my view the majority of the court strays in that portion of its opinion which interprets § 33-28-103(a)(vi), W.S. 1977.
The majority of the court adopts the claim of the appellee that this section must be construed to the end that a "subdivision" can only be found in some state other than Wyoming. Upon reflection it indeed seems to be a strange and wonderful result for our legislature, in adopting a comprehensive regulatory scheme for real estate licensing to decide that it would only attempt to regulate transactions involving subdivisions lying outside the State of Wyoming. My scrutiny of the statutory language leads me to the conclusion that the word "subdivision" includes subdivisions in the State of Wyoming, and if that is true the statutory scheme leads to the opposite result from that suggested by the majority.
The critical language in § 33-28-102(a)(vi) is "The term `subdivision' means any land or tract of land in another state which is divided or proposed to be divided into five (5) or more lots, parcels, units or interests * * *." The effect of the construction placed upon the statute by the majority is that the modifying phrase "in another state" relates to the words "any land" as well as the words "tract of land." This construction is contrary to the rule previously espoused by this court which requires every part of a statute to be given effect if possible. State Board of Equalization v. Cheyenne Newspapers, Inc., Wyo., 611 P.2d 805 (1980); Belco Petroleum Corporation v. State Board of Equalization, Wyo., 587 P.2d 204 (1978); and Wheatland Irrigation District v. Short, 80 Wyo. 136, 339 P.2d 403 (1959). Instead the construction given by the majority leads to a statutory redundancy in the phrase "any land or tract of land," treating the two phrases as meaning the same thing. More significantly, we previously have held that the use of the term "or" in a statute denotes alternatives. Basin Electric Power Cooperative v. State Board of Control, Wyo., 578 P.2d 557 *1165 (1978); Voss v. Ralston, Wyo., 550 P.2d 481 (1976). In this statute it also denotes alternatives.
In addition the language used in the statute by the legislature makes it appropriate to apply the following intrinsic aid to statutory construction as suggested by Professor Sands in 2A Sutherland Statutory Construction § 47.33, p. 159 (1973), as supplemented by Professor Singer in the 1982 Cumulative Supplement:
"Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent, which consists of `the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.' Thus a proviso usually is construed to apply to the provision or clause immediately preceding it. The rule is but another aid to discovery of intent or meaning, however, and not an inflexible and uniformly binding rule. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent. Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." (Footnotes omitted.)
It is particularly noted that the qualifying phrase "in another state" is not set off by commas. That coupled with the use of the disjunctive "or" leads to the conclusion that the legislature intended to describe both "any land" and a "tract of land in another state." The words "any land" include lands in the State of Wyoming. This is a sensible construction of legislative intent in a situation in which the legislature was dealing with a licensing scheme designed to provide protection to citizens of this state with respect to purchases of real estate. We previously have noted that our act is designed for the protection of the public and must be construed in light of its beneficent purpose so as to effectuate the intention of the legislature. Hagar v. Mobley, Wyo., 638 P.2d 127 (1981); Toavs v. State, Wyo., 635 P.2d 1172 (1981). A construction of the statute which excludes subdivisions in the State of Wyoming is contrary to the previously articulated legislative purpose.
Conceding that the appellant comes before the court in a posture which in most instances would justify depriving it of any equitable considerations, I suppose we must recognize that the legislature can adopt statutes which do not afford equity in all situations. On the premise that in this instance we were dealing with a "subdivider," i.e. Battlefield, Inc., which was offering subdivided land for disposition, it is clear to me that the exemption statute, § 33-28-103, W.S. 1977, by virtue of its proviso is not applicable because the statute says:
"* * * provided, however, this section shall not exclude those persons, who as subdividers, sell or offer for sale subdivisions."
If Battlefield, Inc., as the owner, is not within the exemption of that section by virtue of the quoted language, then there is no possibility that the appellee can be within the exemption, and her status as a "regular employee" is not important for purposes of disposition.
Absent the benefit of the exemption statute, the appellee is a broker under one of the definitions found in § 33-28-102(a)(ii), which provides in pertinent part:
"* * * The term `broker' also includes any person employed by or on behalf of the owner or owners of real estate to conduct the sale, leasing, or other disposition thereof at a salary or for a fee, commission or any other consideration. * * *"
It is obvious from the description of the facts found in the majority opinion that the appellee was doing some of these things.
The next step in sequence is the invocation of § 33-28-115, W.S. 1977, which provides as follows:
"No person shall maintain an action in any court of this state for the recovery of a commission, fee, or compensation for *1166 any act done, the doing of which is prohibited under this act [§§ 33-28-101 to XX-XX-XXX] to other than licensed brokers, unless such person was licensed hereunder as a broker at the time of the doing of the act."
The actions of the appellee are made unlawful by § 33-28-101, W.S. 1977. The appellee was not licensed as a broker.
In Dixon v. Ringsby, Wyo., 405 P.2d 271 (1965), this court held that the predecessor of § 33-28-115, W.S. 1977 (§ 33-350, W.S. 1957) precluded an action to recover compensation alleged to be due a ranch manager for locating a buyer for the ranch real property. The court cited Owens v. Capri, 65 Wyo. 325, 202 P.2d 174 (1949), and in effect held that one who is in the regular business of being a ranch manager obviously became a broker even for purposes of a single transaction. Justice Rooney already has pointed out that the appellee here had a regular business of being clerk of the district court. Courts in other states have reached similar conclusions. Ness v. Greater Arizona Realty, Inc., 117 Ariz. 357, 572 P.2d 1195 (1977); Marcotte Realty & Auction, Inc. v. Schumacher, 225 Kan. 193, 589 P.2d 570 (1979); Islandia, Inc. v. Marechek, 82 Nev. 424, 420 P.2d 5 (1966); Ratcliff v. Cobb, Okla., 439 P.2d 194 (1968); and Brown v. Haverfield, 276 Or. 911, 557 P.2d 233 (1976).
Since I am persuaded that the exemption provision is not available because our legislature intended to regulate subdivisions in the State of Wyoming as well as subdivisions out of the State of Wyoming, I am satisfied that the district court should be reversed as a matter of law. The marketing of the subdivision in this instance forecloses the application of the exemption statute, leaving the appellee in the situation of a broker without a license. Conceding that it is difficult to bear witness to a situation in which one who has accomplished the required tasks is denied the agreed-upon compensation for doing that work that is what the legislature clearly intended, as this court previously has recognized. Dixon v. Ringsby, supra; Doran v. Imeson Aviation, Inc., 419 F. Supp. 586 (D.Wyo. 1976).
NOTES
[*] Became Chief Justice on January 1, 1983.
[**] Chief Justice at time of oral argument.
[1] Section 33-28-103, W.S. 1977 provides:

"The provisions of this act [§§ 33-28-101 to XX-XX-XXX] shall not apply to an owner of real estate or to a member of his or her immediate family or to his regular employees with respect to property owned by him, or to an attorney in fact under a duly executed power of attorney authorizing the consummation of a real estate transaction or to an attorney-at-law in the performance of his duties as an attorney or to a public official in the conduct of his official duties, or to a person acting as receiver, trustee, administrator, executor, or guardian, or while acting under court order or under the authority of a will or of a trust instrument, provided, however, this section shall not exclude those persons, who as subdividers, sell or offer for sale subdivisions." (Emphasis added.)
[2] In Hagar v. Mobley, Wyo., 638 P.2d 127, 136 (1981), speaking of the Wyoming Real Estate Licensing Act, we said:

"* * * An act licensing real estate agents must be construed in the light of an obvious purpose of protecting the public in the handling of important and valuable transactions relating to real property. Toavs v. State, Wyo., 635 P.2d 1172 (1981)."